AMERICAN TRUST CO. OF PITTSBURGH v. WALLIS.

(Circuit Court of Appeals, Third Circuit. December 18, 1903.)

No. 24.

1. BANKRUPTCY — POWERS OF COURT — ORDERING BANKRUPT TO PAY OVER MONEY.

A court of bankruptcy or referee is without power to order a bankrupt to pay over to his trustee money collected from his debtors after he had knowledge of the filing of the petition in bankruptcy against him by creditors, which money has since passed into the possession of others, and is not under his control.

Appeal from the District Court of the United States for the Western District of Pennsylvania.

Charles A. Woods, for appellant.

H. W. McIntosh, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the District Court of the United States for the Western District of Pennsylvania, in Bankruptcy, in the matter of William B. Wallis, bankrupt. On May 6, 1902, a creditors' petition in bankruptcy was filed against William B. Wallis, a dealer in machinery and supplies in Pittsburgh, Pennsylvania; and thereafter, no one objecting, on May 31, 1902, said Wallis was adjudged a bankrupt, and on August 9, 1902, the American Trust Company of Pittsburgh, the appellant, was duly elected and qualified as trustee in bankruptcy of the bankrupt's estate; the same trust company having prior thereto, on May 8, 1902, been appointed by the court temporary receiver in bankruptcy of said estate. On October 9, 1902, a petition was filed by the trustee, before the referee

to whom the case had been referred, setting forth that William B. Wallis, the bankrupt, on May 6, 1902, and during several days subsequent thereto, with notice or knowledge of the filing of the involuntary petition in bankruptcy against him, had collected sums of money from various debtors, amounting in the aggregate to $1,071.40; that the petitioner, both as receiver and trustee, had made demands on him to turn over the said sum, but that he refused and neglected so to do, and praying for an order on the bankrupt to turn over said sum to the trustee. A rule to show cause was granted on this petition, and the bankrupt filed an answer, admitting that he had collected certain sums from his debtors, to the aggregate amount stated, with notice or knowledge of the filing of the petition in bankruptcy, but that he had disbursed said money to various creditors, and that no portion of it remained in his possession. He also states, and it is not denied, that upon the appointment of the trust company, as receiver, and upon requests made, he prepared and filed with said trust company a list of said collections, from which the list filed with said petition was made; that at the time said list of collections was filed with said trust company, there was also filed by him a list of disbursements of said money, showing that the whole amount thereof, and more, was, about the same time that it was collected, actually distributed and disbursed, and that no portion thereof remained or remains in the hands of the respondent, or within his control. The respondent avers himself "ready and willing to abide and comply with the decrees of this court, so far as in his power lies; to give such other and further information, if any there be not already given, as may be in his possession, to the end that right and justice may be done; give testimony at any legal inquiry or cause of action looking to the recovery of said moneys disbursed as aforesaid, or any of them; but he respectfully submits that said disbursements having been made by him in good faith and before he was adjudged a bankrupt, under the facts and under the law as he is advised of the same, he is justly entitled to his discharge, for which he respectfully prays." It is not denied that the collections and disbursements referred to were made with notice or knowledge of the filing of the petition in involuntary bankruptcy. There was no concealment or fraud of any kind alleged to have been committed by the bankrupt, and he has not failed to turn over to the receiver everything which he possesses, not claiming the $300—exemption allowed him by law. After argument, on October 31, 1902, the said referee filed an opinion and an order, dismissing the trustee's petition and refusing to grant an order requiring the bankrupt to turn over to the trustee the said sum of money, to which opinion and order the trustee filed objections and a petition for a certification to the district judge for a review thereon. Thereupon, after argument, the District Court in Bankruptcy, on June 27, 1903, made an order and decree, affirming the opinion and order of the referee, and it is this order and decree that is now before us for review.

The single question arising on the case thus presented is:—Has the referee, or the court in bankruptcy, power to order the bankrupt to deliver and turn over to the trustee in bankruptcy, money collected from his debtors after he had received notice or knowledge of the fil-

126 F.—30

ing of the petition by creditors to have him adjudged a bankrupt, which money has since passed into the possession of others and is not under the control of the bankrupt? The question is unembarrassed by any allegation of fraud or concealment on the part of the bankrupt, or of those whom he preferred by payments of his debts to them out of the moneys collected.

The referee and the District Court were successively asked for a peremptory order upon the bankrupt to turn over to the trustee the money which he admits to have collected under the circumstances stated in the petition, but which, it is not denied by the trustee, is not now in the possession or control of the said bankrupt. The powers vested in courts of bankruptcy, to accomplish the general purpose of the bankrupt law, to wit, to segregate the estate of the bankrupt and provide for its equitable distribution amongst the creditors, are plenary and far-reaching. The court may, by summary order, direct the delivery and turning over to the trustee by the bankrupt, or by any third person holding the same under his order and control, any property which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. For disobedience of such order, the court in bankruptcy undoubtedly has the power, by attachment for contempt, to enforce compliance with such order, and punish refusal to comply. This power, however, is far-reaching and drastic, and must be exercised with cautious discretion. If the bankrupt denies that he has possession or control of the property, or, if a third person in possession thereof claims to hold it, not as the agent or representative of the bankrupt, but by title adverse to him, and there is no evidence to indisputably show that such denial or claim is false or fraudulent, and that the case is one of simple concealment or refusal on the part of the bankrupt, or the one in possession, to deliver up the property as ordered, it would be an unwarranted stretch of power on the part of the court to resort to a summary proceeding for contempt for the enforcement of its order. In the absence of fraud or concealment, the bankrupt court can only order the delivery of property to the trustee which the bankrupt is physically able to deliver up, having the same in his possession or control. If it shall appear that he is not physically able to deliver the property required by the order, then, confessedly, proceedings for contempt, by fine and imprisonment, would result in nothing, certainly not in a compliance with the order. The contempt in this case could only be purged by a reiteration of the physical impossibility to comply with the order whose disobedience is being thus punished. An order made under such circumstances would be as absurd as it is inconsistent with the principles of individual liberty. But it may be said that, to have collected this money from his debtors and distributed it to his creditors, with knowledge of the filing of the petition in bankruptcy, was in contempt of the bankrupt law and of the proceedings in bankruptcy, which were a caveat to all the world as to the effect of such proceedings upon the property of the bankrupt in case he should be so declared. This, however, would but be a constructive contempt, and not liable to the summary pun-

ishment by fine and imprisonment which may be inflicted for actual contempt, committed in the presence of the court or by open and defiant refusal to comply with its lawful commands, where compliance is physically possible. ,

The bankruptcy court is clothed with power, when the circumstances appear to it to warrant such proceedings, to have the bankrupt's property seized by a marshal or special master, immediately upon the filing of the petition in bankruptcy. This power is a summary one, and can be exercised upon an ex parte suggestion, and was intended to meet the inconvenience suggested by appellant, of allowing the property of the bankrupt to remain in his possession and control and liable to be unlawfully made away with or concealed in the interval between the filing of the petition and the appointment of a trustee. A provision of this kind, however, cannot always perfectly protect the creditors in their right to have the whole estate of the bankrupt segregated and guarded for their benefit. It does so as nearly as it can, with due regard to fundamental principles and policies. It is better to fall short of an absolutely perfect administration of the theory of the bankrupt law, than to arm referee or court with powers of oppression alien to the spirit of our laws and institutions. A careful examination of the authorities cited by the appellant discloses no case which would justify the making of the order asked for by the appellant.

The opinion of the court in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, cited by the appellant, is .far from supporting its contention. By its careful and discriminating statement of the facts upon which the judgment of the court is founded, it supports the view here taken. The facts in that case, as pertinent to the point now under consideration, were briefly these: Edward B. Nugent was adjudicated a bankrupt, March 23, 1900, on the petition of certain of his creditors, filed in the District Court February 19, 1900. Mueller was appointed trustee of the bankrupt's estate, and on the 7th of April, obtained an order from the referee, requiring the bankrupt to show cause why he should not pay over the sum of $14,233.45, made up of two items of $4,133.45 and $10,100, received by or for him just prior to the filing of the creditors' petition in bankruptcy. The answer of the bankrupt was held insufficient, and he was ordered to pay over. On failure to do so, he was adjudged guilty of contempt, and the matter was reported to the court by the referee, with a recommendation that he be committed. This recommendation was not acted upon by the court, for the reason that the senile imbecility of the bankrupt made him an unfit subject of punishment. He was, therefore, discharged without prejudice to a renewal of the matter before the referee. Afterwards, the trustee filed a petition before the referee, asking that William T. Nugent, son of the bankrupt, be restrained from disposing of this sum of $14,233.45, belonging to the estate of the bankrupt, and which was admittedly in his (the son's) possession. The referee granted the injunction and entered an order that William T. Nugent show cause why he should not be required to pay over. The order was served, and William T. Nugent appeared in person and filed a response to said rule, which was held

insufficient, and the rule made absolute.    The referee made the following finding of fact:

"I further find that both of said balances, to wit, $4,133.45 and $10,100, belonged to the said bankrupt and became and still are the property of Arthur E. Mueller, trustee in bankruptcy in this cause, and that said W. T. Nugent holds the same as agent or bailee only, and that he has not accounted for any part of said sums."

The matter was brought to the District Court for review, and the district judge stated the facts at length, pointing out that the response was put upon two grounds; viz., that the court and referee were without jurisdiction, and that the respondent had been indicted. The court held that, as to the indictment, it was not an indictment for disobedience to the order, but under section 29 of the Bankrupt Act of July 1, 1898, c. 541, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3434]; that the response really rested on the denial of jurisdiction, and that the referee had the power to order the money to be surrendered, summing up the matter in these words:

"The respondent has the money in his hands as agent or bailee only. His position is that of his principal. His father was his principal, up to a certain stage in these proceedings, but whether up to the filing of the petition or up to the adjudication, we need not stop to inquire, as it is immaterial in this case. At one or the other of these times, his principal, by operation of law, was changed, and an officer of this court was substituted for his father. That change in no way lessened the duty of paying the money to the proper principal upon notice and demand. After the change, however, the money was potentially in the custody of the law in these proceedings and subject to the orders of the court." .

Chief Justice Fuller, in delivering the opinion of the court, uses this language:

"The real question was, whether the order of October 16th, as confirmed by the District Court, was a lawful order. It was to be determined as a mere question of law on the facts found that the money belonged to the bankrupt's estate, and was then in Nugent's possession as the bankrupt's agent, he asserting no adverse claim. * * * The proposition was that, as a matter of law, where property of a bankrupt has come into the hands of a third party before the filing of the petition in bankruptcy, as the agent of the bankrupt, and to which he asserts no adverse claim, the bankruptcy court has no power by summary proceedings to compel the surrender of the property to the trustee in bankruptcy duly appointed."

It was this proposition, thus carefully stated, that the Supreme Court declined to affirm. "In other words," says the court, "the question reduces itself to this: Has the bankruptcy court the power to compel the bankrupt, or his agent, to deliver up money or other assets of the bankrupt, in his possession or that of some one for him, on petition and rule to show cause? Does a mere refusal by the bankrupt or his agent so to deliver up oblige the trustee to resort to a plenary suit in the Circuit Court or a state court, as the case may be?"

It is at once apparent that the questions as thus stated by the Chief Justice, in delivering the opinion of the Supreme Court, were very different from those now before us for determination.    Further on in the opinion, the Chief Justice says:

"There was no pretense that at the date of the filing of this petition in bankruptcy this money of the bankrupt, $4,133.45 of which had been collected

a few days, and $10,100 a few hours, before, was held subject to any adverse claim, or that the right or title thereto had been passed over to another. * * * In the case before us, William T. Nugent held this money as the agent of his father, the bankrupt, and without any claim of adverse interest in himself."

It will thus be seen that in this case, the Supreme Court carefully excluded any ground for an inference that the District Court had power to make an order upon a bankrupt, for the delivery of property admittedly not in his possession or control.

The case of Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451, decided by the Circuit Court of Appeals for the Eighth Circuit shortly after the decision of the Supreme Court, in Mueller v. Nugent, contains a strongly reasoned judgment in line with the views here expressed.

The decree of the court below, approving and affirming the decision of the referee, is therefore affirmed.