In re EPSTEIN.

(District Court, E. D. Pennsylvania. July 14, 1913.)

No. 4,165.

Bankruptcy (§ 235*)—Assets Unaccounted for—Procedure.

Where it is charged that assets of a bankrupt have not been accounted for, the first step in the logical procedure is to determine by a hearing before the referee whether they were in his possession or under his control at the date of the bankruptcy. If the referee so finds, as he may do if they were recently in the bankrupt's possession and he fails to account for them satisfactorily, and the referee's decision is affirmed, or not reviewed, it is conclusive of that question, and may be properly followed by an order directing the bankrupt to turn over the property. His failure to comply with such order renders him presumptively liable to punishment for contempt, but only presumptively, and he is entitled to a second hearing, at which he may show his physical inability to comply, in which case the civil inquiry is at an end.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 389, 395–397; Dec. Dig. § 235.*]

In the matter of A. Epstein, bankrupt. On certificate of referee. Order modified and affirmed.

George P. Rich and Wessel & Aarons, all of Philadelphia, Pa., for trustee.

Alexander J. Brian and Levi & Mandel, all of Philadelphia, Pa., for bankrupt.

J. B. McPHERSON, Circuit Judge. Whatever opinion may be entertained in some other circuits about the proper method of inquiring into a bankrupt's failure to account for assets, and the proper method of punishing such failure, the practice in the Third circuit seems to be logical and to have the advantage of attending to one subject at a time. It may be as well to state it in outline:

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

When the charge is made that assets have apparently not been accounted for, the referee hears and decides the dispute in the first instance. The point of time to which the inquiry is directed is the date of bankruptcy, and the precise question is whether the bankrupt was then in possession or control of money or of goods that apparently should have come into the hands of the trustee. Being fundamental, this question needs to be examined first of all, but it neither involves the bankrupt's present ability to turn over, nor raises the question whether he should be punished for contempt—except, of course, as the complexity of human affairs may compel an occasional approach to these allied subjects. The two questions last referred to, therefore, do not need consideration at the first stage of the investigation. If the assets that presumably should have been in the bankrupt's possession or control at the time of bankruptcy have not been accounted for, the referee may, and probably will, draw the natural inference, and direct the bankrupt to pay the money or deliver the goods, as the case may be. If this order becomes final, either by failure to have it reviewed or by affirmance in the District Court, a definite step has been taken; the proper tribunal has settled beyond future controversy that the assets described were in the bankrupt's possession or control at the time of bankruptcy.

Then comes the next question: Are they still there? Or what has become of them? This is evidently a distinct subject, which should not be confused with the other, but should be separately treated. It will need no attention, unless the bankrupt should fail to comply with the order to hand over; but failure to comply makes him presumptively liable to punishment for contempt. But only presumptively; he may have a complete answer to any attempt to punish, and in any event he cannot be punished until he has been heard. In such a hearing the inquiry is directed to the bankrupt's present ability to pay the money or deliver the goods, and unquestionably he makes a sufficient answer if he shows that he is physically unable to obey the order. If it be true that he does not now possess or control the assets, he may still be liable to the criminal law; but, except for willful disobedience of the court's command, he cannot be confined by civil process. The evidence produced must therefore satisfy the judge that the bankrupt is really unable to obey, and is not merely defying the order. This presents a mere question of evidence, and, if the bankrupt fails to prove that he cannot comply, he is simply in the ordinary position of a suitor that has not offered enough evidence to prove a fact, and is obliged to take the consequence of such failure. In the case in hand the consequence is, that, as the order to pay or deliver stands without sufficient reply, it remains what it has been from the first—an order presumed to be right, and therefore an order that ought to be enforced. In the pending case, or in any other, the court may believe the bankrupt's assertion that he is not now in possession or control of the money or the goods, and in that event the civil inquiry is at an end; but it is also true that the assertion may not be believed, and the bankrupt may therefore be subjected to the usual pressure that follows willful disobedience of a lawful command, namely, the inconvenience

of being restrained of his liberty. No doubt this may be unpleasant; it is intended to be unpleasant, but I see no reason why the proceeding should be condemned, as if it interfered with the liberty of the citizen without sufficient reason or excuse. I have known a brief confinement to produce the money promptly, thus justifying the court's incredulity, and I have also known it to fail. Where it has failed, and where a reasonable interval of time has supplied the previous defect in the evidence, and has made sufficiently certain what was doubtful before, namely, the bankrupt's inability to obey the order, he has always been released, and I need hardly say that he would always have the right to be released as soon as the fact becomes clear that he cannot obey. Actual or virtual imprisonment for debt has ceased, but imprisonment to compel obedience to a lawful judicial order (if it appear that obedience is being willfully refused) has not yet ceased, and ought not to cease, unless it should be thought expedient to destroy all respect for the courts by stripping them of power to enforce their lawful decrees.

The foregoing statement is supported by the following opinions, in which other citations will be found: Cummings v. Synnott (C. C. A.) 184 Fed. 718, 107 C. C. A. 62; Re Cummings (D. C.) 26 Am. Bankr. Rep. 130, 186 Fed. 1020; Re Cummings (D. C.) 188 Fed. 767; Re Marks (D. C.) 176 Fed. 1018; Re Sax (D. C.) 15 Am. Bankr. Rep. 455, 141 Fed. 223.

In the present controversy (which is only in the first stage) I have considered the evidence, and approve the findings and order of the referee. But I think it desirable to modify the order slightly by striking out the words, "of the value of $28,686.34," and by striking out also the words, "and still withholds." And, as it is also desirable to fix another time within which the order is to be obeyed, I substitute July 25, 1913, for "forthwith." Thus modified, the order is affirmed. It will read as follows:

It is hereby ordered that the said A. Epstein, the bankrupt, do deliver to Abraham Steinfeld, trustee of the estate of A. Epstein, 3,061 dozen waists and 8,013⅞ yards and 10,750⁵/₁₂ dozen trimmings, on or before July 25, 1913, which property the said bankrupt had in his possession at the time of the filing of the petition against him, and which he withheld from his said trustee.