EPSTEIN v. STEINFELD.

(Circuit Court of Appeals, Third Circuit. January 2, 1914.)

No. 1769.

1. BANKRUPTCY (§ 467*)—FINDINGS OF REFEREE—REVIEW.

Findings of the referee in a bankruptcy proceeding, based on conflicting evidence, and affirmed by the district court, will not be disturbed on appeal, unless it is demonstrated that a plain mistake has been made.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. § 467.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 136*) — WITHHOLDING ASSETS — DELIVERY TO TRUSTEE — POWER TO DELIVER.

An order, requiring a bankrupt to deliver property alleged to have been withheld from his trustee, should only be granted in case it appears that the bankrupt is physically able to deliver the property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. B. McPherson, Judge.

Action by Abraham Steinfeld, as trustee in bankruptcy of A. Epstein, individually and trading as A. Epstein & Co., against Abraham Epstein. From an order (In re Epstein, 206 Fed. 568), requiring the bankrupt to deliver to his trustee certain specified goods, he appeals. Affirmed.

Julius C. Levi and Alexander J. Brian, both of Philadelphia, Pa., for appellant.

Henry N. Wessel and George P. Rich, both of Philadelphia, Pa., for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

YOUNG, District Judge. This is an appeal from an order of the District Court in bankruptcy in the matter of Abraham Epstein, bankrupt. The order appealed from is as follows:

"And now, to wit, July 21, 1913, in accordance with the opinion and order of court filed July 14, 1913, it is hereby ordered that the said A. Epstein, the bankrupt, do deliver to Abraham Steinfeld, trustee of the estate of A. Epstein, 3,061 dozen waists, 8,013⅞ yards and 10,750 ⁵/₁₂ dozen trimmings, on or before July 25, 1913, which property the said bankrupt had in his possession at the time of the filing of the petition against him, and which he withheld from his said trustee."

Referring to the opinion of the learned judge of the District Court we find the following:

"In the present controversy (which is only in the first stage), I have considered the evidence, and approve the findings and order of the referee. But I

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

think it desirable to modify the order slightly by striking out the words, 'of the value of $28,686.34,' and by striking out also the words. 'and still withholds.' And, as it is also desirable to fix another time within which the order is to be obeyed, I substitute July 25, 1913, for 'forthwith.' Thus modified, the order is affirmed."

[1] The findings of the referee were made by him after he had taken a large amount of conflicting testimony covering every phase of the alleged withholding of property by the bankrupt, and when he had the opportunity to and did see the witnesses who testified. His findings, as has been decided over and over again, ought not to be disturbed except where it is demonstrated that a plain mistake has been made. This rule is so forcibly stated in Ohio Valley Bank Co. v. Mack, 163 Fed. 155, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184, by Judge Lurton, that we quote it at some length:

"No arbitrary rule can be laid down for determining the weight which should be attached to a finding of fact by a bankrupt referee. His position and du-. ties are analogous, however, to those of a special master directed to take evidence and report his conclusions, and the rule applicable to a review of a referee's findings of fact must be substantially that applicable to a master's report. Tilghman v. Proctor, 125 U. S. 137, 8 Sup. Ct. 894, 31 L. Ed. 664; Davis v. Schwartz. 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289; Emil Kiewert & Co. v. Juneau, 78 Fed. 708, 24 C. C. A. 294; Tug River Co. v. Brigel, 86 Fed. 818, 30 C. C. A. 415. Much in both cases must depend upon the character of the finding. If it be a deduction from established fact, the finding would not carry any great weight, for the judge, having the same facts, may as well draw inferences or deduce a conclusion as the referee. But, if the finding is based upon conflicting evidence involving questions of credibility, and the referee has heard the witnesses, much greater weight naturally attaches to his conclusion, and the weight of authority is that the district judge, while scrutinizing with care his conclusions upon review. should not disturb his findings unless there is most cogent evidence of a mistake and miscarriage of justice. Loveland on Bankruptcy, § 32a; In re Swift (D. C.) 118 Fed. 348; In re Rider (D. C.) 96 Fed. 811; In re Waxelbaum (D. C.) 101 Fed. 228; In re Stout (D. C.) 109 Fed. 794; In re Miner (D. C.) 117 Fed. 953. In this case the conclusions of the referee necessarily involved the credibility of the witnesses who testified to the bona fides of the claim preferred by Charles Mack, Sr. The conclusion he reached in favor of the validity of his debt has also passed the scrutiny of the district judge. Under such circumstances, this court is not warranted in overturning the conclusions of two courts upon anything less than a demonstration of plain mistake."

It is the rule which has obtained in this circuit, and we again affirm it in order that it may be regarded as settled beyond controversy. The learned judge of the District Court had all the evidence and the findings of the referee before him and he has approved them. We have thus the conclusions of two courts, and they ought not to be disturbed except for a plain mistake which would result in the defeat of justice. We have carefully and thoroughly examined the evidence in this case to determine whether or not the findings of the referee are demonstrated to be clearly erroneous. The evidence which must be considered as the basis of the findings is that of an expert accountant. This accountant had all the books of the bankrupt, which appear to have been regularly kept, and which were stated by the bankrupt under oath to be correct, and he had a statement of assets and liabilities sworn to by the bankrupt on July 5, 1911. His examination covered the period from July 5, 1911, to October 11, 1911, the date of the bankrupt's ad-

judication. He had also during his investigation such information as could be obtained from the bankrupt and his employés as to the cost of manufacture. He submitted to the referee a voluminous statement, showing the manner of his examination and how he arrived at his conclusions, and also a summary of his work, showing the conclusions to which he had come. The only attack upon his evidence worthy of consideration is that his account is based upon the inventory or statement of the bankrupt's assets and liabilities, made and sworn to by the bankrupt July 5, 1911, and that this statement incorrectly gives the amount of made-up waists in dozens, whereas the actual count was that of units or single waists. Certain former employés of the bankrupt were called to testify that in making the inventory single waists were counted, the amount written on slips of paper and the price per dozen also stated thereon, and that these slips of paper were given to the bookkeeper for entry in the books, and that the bookkeeper took the statement of the price per dozen as indicating the numbers referred to as dozens, and therefore entered the numbers of single waists as dozens at the price of dozens, and thus made the inventory in that particular show 12 times the value of the goods on hand. The evidence of these witnesses was taken by the referee, and he saw the witnesses and heard them testify. He was better able to judge than we of their truthfulness and to pass upon the value of their evidence. The evidence in itself was conflicting and uncertain. Its comparison with the other evidence in the case as to the manner of taking former inventories, as to the amount of material bought for manufacture, the number of persons employed, the amount paid out for wages and the number of manufactured waists sold, makes the evidence far from clear and convincing. It was peculiarly a case where the referee would be the better judge of its value and persuasiveness, and it emphasizes the wisdom of the rule that his findings ought not ordinarily to be disturbed. We cannot say, after the most thorough consideration of the evidence, that we would have found otherwise, much less do we find that it demonstrates that a plain mistake has been made by the referee.

In his opinion the learned judge of the District Court stated the correct practice in cases of this kind as follows:

"When the charge is made that assets have apparently not been accounted for, the referee hears and decides the dispute in the first instance. The point of time to which the inquiry is directed is the date of bankruptcy, and the precise question is whether the bankrupt was then in possession or control of money or of goods that apparently should have come into the hands of the trustee. Being fundamental, this question needs to be examined first of all, but it neither involves the bankrupt's present ability to turn over, nor raises the question whether he should be punished for contempt—except, of course, as the complexity of human affairs may compel an occasional approach to these allied subjects. The two questions last referred to, therefore, do not need consideration at the first stage of the investigation. If the assets that presumably should have been in the bankrupt's possession or control at the time of bankruptcy have not been accounted for, the referee may, and probably will, draw the natural inference and direct the bankrupt to pay the money or deliver the goods, as the case may be. If this order becomes final, either by failure to have it reviewed or by affirmance in the District Court, a definite step has been taken; the proper tribunal has settled beyond future controversy that the assets described were in the bankrupt's possession or control at the time of bankruptcy."

[2] This is the first stage of the proceeding. The second stage is to determine whether or not the property required is still in the possession or control of the bankrupt, and that he is physically able to deliver it to his trustee. The correct practice at this stage of the proceedings has been authoritatively stated by Judge Gray in American Trust Co. v. Wallis, 126 Fed. 464, 61 C. C. A. 342, in the following language:

"If the bankrupt denies that he has possession or control of the property, or, if a third person in possession thereof claims to hold it, not as the agent or representative of the bankrupt, but by title adverse to him, and there is no evidence to indisputably show that such denial or claim is false or fraudulent, and that the case is one of simple concealment or refusal on the part of the bankrupt, or the one in possession, to deliver up the property as ordered, it would be an unwarranted stretch of power on the part of the court to resort to a summary proceeding for contempt for the enforcement of its order. In the absence of fraud or concealment, the bankrupt court can only order the delivery of property to the trustee which the bankrupt is physically able to deliver·up, having the same in his possession or control. If it shall appear that he is not physically able to deliver the property required by the order, then, confessedly, proceedings for contempt, by fine and imprisonment, would result in nothing, certainly not in a compliance with the order. The contempt in this case·could only be purged by a reiteration of the physical impossibility to comply with the order whose disobedience is being thus punished. An order made under such circumstances would be as absurd as it is inconsistent with the principles of individual liberty." ·

By following the practice as formulated by Judge McPherson in this case in the first stage of the proceedings in like cases, and by observing the guiding principles as stated by Judge Gray in American Trust Company v. Wallis, supra, in the final stage, we shall have a logical and just means of determining the rights of the creditors and of doing exact justice by the bankrupt. This much we think is necessary to be said so that the practice in this circuit may be uniform in all of the districts in the circuit.

The order of the learned judge of the District Court is affirmed.