## In re STERN et al.

### (District Court, D. New Jersey. May, 1914.)

1. BANKRUPTCY (§ 136*)—ORDER TO TURN OVER MONEY—FAILURE TO COMPLY—CONTEMPT—PUNISHMENT.

Since a proceeding to punish a bankrupt for failure to comply with an order, requiring him to turn over money alleged to have been withheld, to his trustee, is for civil contempt, and the only punishment would be remedial, that is, a commitment of the bankrupt, unless and until the order was complied with, the punishment cannot be imposed when it is shown that the bankrupt at the time of the hearing was unable to comply with the order.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

2. BANKRUPTCY (§ 136*) — WITHHELD ASSETS — PROCEEDINGS AGAINST BANKRUPT.

In proceedings against a bankrupt to compel him to turn over assets alleged to have been withheld from his trustee, it is the duty of the court first to ascertain whether the property was in the bankrupt's possession or control at the time of the bankruptcy, and then whether the property is still in his possession and he is physically able to deliver it to the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

3. BANKRUPTCY (§ 136*)—WITHHELD ASSETS—FAILURE TO DELIVER TO TRUSTEE—ABILITY—BANKRUPT'S DENIAL.

In proceedings to punish a bankrupt for contempt in failing to comply with an order requiring him to turn over to his trustee, assets alleged to have been withheld, the bankrupt's mere denial of his ability to comply with the order is not controlling.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

4. BANKRUPTCY (§ 136*)—WITHHELD ASSETS—ORDER TO SURRENDER—FAILURE TO COMPLY—CONTEMPT.

Where a bankrupt, after being ordered to pay over alleged withheld assets to his trustee, so deals with the fund as to make it impossible for him to comply with the order, he will be guilty of criminal contempt, and punishable in a proceeding for criminal contempt by a fine in a definite amount, or by commitment to prison for a fixed term.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

5. BANKRUPTCY (§ 485*)—OFFENSES—CONCEALMENT OF ASSETS.

Where a bankrupt knowingly and fraudulently conceals assets from his trustee, he is punishable under Bankruptcy Act, July 1, 1898, c. 541, § 29b, 30 Stat. 554 (U. S. Comp. St. 1901, p. 3433), making such act an offense, though the property had been disposed of before any order had been made requiring the bankrupt to pay over the assets withheld to the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 906, 908; Dec. Dig. § 485.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Jacob and Joseph Stern. On application to have bankrupts adjudged guilty of contempt. Denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. Howard Reber and J. B. Colahan, 3d, both of Philadelphia, Pa., for trustee.

A. S. Ashbridge, Jr., of Philadelphia, Pa., for bankrupts.

HAIGHT, District Judge. This is an application to adjudge the bankrupts guilty of contempt for failing to comply with an order directing them to pay to the trustee $3,116, for which they had failed to account. An order was made by the referee in December, 1911, which directed the bankrupts to pay $14,686.80 to the trustee. This was modified as to amount by order of the court filed in July, 1912. The bankrupts failed to comply with the order. Thereafter, on the petition of the trustee, an order to show cause was made why the bankrupts should not be adjudged guilty of contempt. They answered, setting up that they were unable to comply with the order in whole or in part. The testimony which was taken before the special master, to whom this phase of the matter was referred, shows that the bankrupts are unable to comply with the order, and the special master has so reported.

[1] Under the principles enunciated in Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, the present proceeding must be considered as one for civil contempt, and the only punishment that could be imposed would be remedial, that is to say, a commitment of the bankrupts, unless and until they had complied with the order. As the bankrupts are now, so far as the evidence shows, unable to comply with the order, the only punishment which is permissible in these proceedings cannot be imposed. American Trust Co. v. Wallis (C. C. A., 3d Cir.) 11 Am. Bankr. Rep. 360, 126 Fed. 464, 61 C. C. A. 342; Boyd v. Glucklich (C. C. A., 8th Cir.) 8 Am. Bankr. Rep. 393, 116 Fed. 131, 53 C. C. A. 451; Kirsner v. Taliaferro (C. C. A., 4th Cir.) 29 Am. Bankr. Rep. 832, 202 Fed. 51, 120 C. C. A. 305.

[2] The practice and rules which must govern the courts in this district in proceedings to compel bankrupts to deliver property to their trustees has recently been announced by the Circuit Court of Appeals of the Third Circuit, in Epstein v. Steinfeld, 32 Am. Bankr. Rep. 61, 210 Fed. 236, 127 C. C. A. 54. It was held that the first stage is to determine whether the property was in the bankrupt's possession or control at the time of the bankruptcy, and that the second stage—

"is to determine whether or not the property required is still in the possession or control of the bankrupt, and that he is physically able to deliver it to his trustee."

The practice to be followed in deciding the latter question is thus stated by the court:

"The correct practice at this stage of the proceedings has been authoritatively stated by Judge Gray in American Trust Co. v. Wallis (C. C. A., 3d Cir.) 11 Am. Bankr. Rep. 360, 126 Fed. 464, 61 C. C. A. 342, in the following language: 'If the bankrupt denies that he has possession or control of the property, or, if a third person in possession thereof claims to hold it, not as the agent or representative of the bankrupt, but by title adverse to him, and there is no evidence to indisputably show that such denial or claim is false or fraudulent, and that the case is one of simple concealment or refusal

on the part of the bankrupt, or the one in possession, to deliver up the property as ordered, it would be an unwarranted stretch of power on the part of the court to resort to a summary proceeding for contempt for the enforcement of its order. In the absence of fraud or concealment, the bankruptcy court can only order the delivery of property to the trustee which the bankrupt is physically able to deliver up, having the same in his possession or control.' "

[3] The mere denial of the bankrupt is by no means controlling. Matter of Kramer & Muchnick (D. C. Pa.) 31 Am. Bankr. Rep. 525, 210 Fed. 977.

[4] I do not doubt, if it could be shown that the bankrupts had so dealt with this money, after they had been ordered to pay it to the trustee, as to make it impossible for them to comply with the order, that they would be guilty of and could be punished for a criminal contempt. Such punishment could, however, be imposed only in a proceeding for criminal contempt, and would take the form of a fine in a definite amount, or a committal to prison for a fixed term. Gompers v. Bucks Stove & Range Co., supra.

If the evidence before me were sufficient to justify the belief that there could be a conviction for such a criminal contempt, I would not hesitate to direct appropriate proceedings to be instituted. The bankrupts deny that they had possession or control of this money at the time the order was made, "and there is no evidence to indisputably show that such denial or claim is false or fraudulent." This would constitute a complete defense to proceedings for criminal contempt as well as civil contempt.

It is urged that the order directing the bankrupts to pay the money to the trustee has established that they did have the money in their possession, and that thus their ability to comply with the order at the time it was made is res adjudicata. In the memorandum of this court, upon which the order was made, it was said:

"The sum of $3,116 above referred to was in their [the bankrupts'] possession just prior to the institution of the bankruptcy proceedings, and under the circumstances may properly be regarded as still in their possession."

It thus appears that the finding that the bankrupts had the money in their possession at the time of the making of the order was based on a presumption. This does not satisfy the requirements of the above-mentioned rule.

[5] In view of the long period of time which intervened between the filing of the petition for adjudication and the making of the referee's order that the money be paid to the trustee, the above finding of the court could not preclude the bankrupts from showing, in proceedings for either civil or criminal contempt, that they were actually unable to comply with the order when it was made. The petition in bankruptcy was filed in April, 1910, and the order of the referee, directing the payment of the money, was not made until December, 1911. The great difficulty in this case is the length of time which elapsed between the filing of the petition and the order to pay. During that time the bankrupts may very well have used, or legitimately disposed of, the money. If the bankrupts knowingly and fraudulently concealed this money from the trustee, even though it had been disposed of be-

fore the order to pay was made, they were liable to criminal prosecution and punishment under section 29b of the Bankruptcy Act. A means is thereby provided for punishment of those bankrupts who can escape punishment for contempt by showing their inability to comply with an order directing them to turn over property to a trustee.

The present order to show cause must therefore be discharged, but without prejudice to institute proceedings for criminal contempt, if there is sufficient evidence to establish the fact that the bankrupts were able to comply with the order of the referee as modified by the court, at the time it was made.