### In re RICCIARDELLI.

(District Court, D. New Jersey. July 30, 1915.)

1. BANKRUPTCY ☞136—REQUIRING BANKRUPT TO TURN OVER ASSETS TO TRUSTEE—SUMMARY PROCEEDINGS.

A proceeding to require a bankrupt to turn over assets to his trustee and a proceeding for contempt to enforce an order to turn over assets are distinct; and in the former proceeding the question is whether the bankrupt had assets which he failed to schedule and turn over, while in the latter proceeding the question is whether he has present ability to turn over the property pursuant to order therefor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ☞136.]

2. BANKRUPTCY ☞136—REQUIRING BANKRUPT TO TURN OVER ASSETS TO TRUSTEE—SUMMARY PROCEEDINGS.

A trustee, in summary proceedings to require a bankrupt to turn over to him assets, has the burden of proving that the bankrupt had assets which he failed to schedule and turn over, and where it is established or admitted that the bankrupt had possession of unscheduled assets very shortly before the institution of the bankruptcy proceedings, a presumption arises that he had them at the time of the institution of the proceedings, and the burden is on him to show why they were not scheduled and turned over.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ☞136.]

In Bankruptcy. In the matter of Orlando Ricciardelli, bankrupt. On a certificate of the referee denying a petition of the trustee to require the bankrupt to show cause why he should not be required to turn over to the trustee a specified sum. Order reversed, with instructions.

Frank W. Hastings, Jr., of Jersey City, N. J., for trustee.
Frank P. Woglom, of New York City, for bankrupt.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

RELLSTAB, District Judge. On petition of the trustee, the bankrupt was required to show cause why he should not be ordered to turn over to the trustee the sum of $17,550.

The answer of the bankrupt admitted that in the months of November and December, 1911 (the petition in bankruptcy was filed on the 14th of December, 1911), he withdrew from three bank accounts the sum of $16,350. Of this, the answer asserts, the sum of $7,750 was paid to creditors and $1,200 loaned. The testimony shows that more than $6,000 of these withdrawals is unaccounted for, and the referee so certifies.

[1] The referee dismissed the trustee's petition, holding that in proceedings of this kind, under Epstein v. Steinfeld, 210 Fed. 236, 127 C. C. A. 54, and In re Stern (D. C.) 215 Fed. 979, it is necessary to determine, not only that the property claimed was in the bankrupt's possession or control at the time of the bankruptcy, but also that it is still in his possession or control, and that he is physically able to deliver it to the trustee, and that the evidence did not warrant such a conclusion.

The referee, seemingly, has misread these cases, and has relieved the bankrupt of the burden of proof which is cast upon him in proceedings of this character. In Epstein v. Steinfeld, the order under review, as modified by the District Court (206 Fed. 568), required the bankrupt to turn over property which was in his possession at the time the petition in bankruptcy was filed against him. The referee's order had recited that the bankrupt "still withholds" the unscheduled assets. These words were struck out by the District Court, for the reason that the question whether the bankrupt still withheld such moneys was not then necessary to be determined. What Judge McPherson said in that behalf may justifiably be repeated here, as the Circuit Court of Appeals (210 Fed. 238, 127 C. C. A. 54) pointedly stated that it furnished the correct practice in cases of that kind. He said (206 Fed. 569):

"When the charge is made that assets have apparently not been accounted for, the referee hears and decides the dispute in the first instance. The point of time to which the inquiry is directed is the date of bankruptcy, and the precise question is whether the bankrupt was then in possession or control of money or of goods that apparently should have come into the hands of the trustee. Being fundamental, this question needs to be examined first of all; but it neither involves the bankrupt's present ability to turn over, nor raises the question whether he should be punished for contempt—except, of course, as the complexity of human affairs may compel an occasional approach to these allied subjects. The two questions last referred to, therefore, do not need consideration at the first stage of the investigation. If the assets that presumably should have been in the bankrupt's possession or control at the time of bankruptcy have not been accounted for, the referee may, and probably will, draw the natural inference, and direct the bankrupt to pay the money or deliver the goods, as the case may be. If this order becomes final, either by failure to have it reviewed, or by affirmance in the District Court, a definite step has been taken; the proper tribunal has settled beyond future controversy that the assets described were in the bankrupt's possession or control at the time of bankruptcy.

"Then comes the next question: Are they still there? Or what has become of them? This is evidently a distinct subject, which should not be confused with the other, but should be separately treated. It will need no attention,

unless the bankrupt should fail to comply with the order to hand over; but failure to comply makes him presumptively liable to punishment for contempt. But only presumptively; he may have a complete answer to any attempt to punish, and in any event he cannot be punished until he has been heard. In such a hearing the inquiry is directed to the bankrupt's present ability to pay the money or deliver the goods, and unquestionably he makes a sufficient answer if he shows that he is physically unable to obey the order. If it be true that he does not now possess or control the assets, he may still be liable to the criminal law; but, except for willful disobedience of the court's command, he cannot be confined by civil process. The evidence produced must therefore satisfy the judge that the bankrupt is really unable to obey, and is not merely defying the order. This presents a mere question of evidence, and, if the bankrupt fails to prove that he cannot comply, he is simply in the ordinary position of a suitor that has not offered enough evidence to prove a fact, and is obliged to take the consequence of such failure."

That the distinction between the two kinds of proceedings, viz., that to determine whether the bankrupt had assets which he failed to schedule and turn over, and that to enforce an order that he turn over such assets, is important and should be kept in mind is further emphasized by the course taken by such Circuit Court of Appeals in Re Pennell, 214 Fed. 337, 130 C. C. A. 645. In that case the referee's order, affirmed by the District Court of this district, likewise declared "that the bankrupt has the sum of money named now (April 17, 1911) in his possession or under his control." The finding that the bankrupt had the moneys at the time the proceedings in bankruptcy were begun was affirmed by the appellate court, but the order was modified by striking out the word "now" and adding, after the word "control," the words "on the date of bankruptcy, namely, June 4, 1906"; the court, by his honor, Judge McPherson, saying in that behalf:

"The date involved in the referee's investigation was the date of bankruptcy, and that was June 4, 1906. * * * What may have become of the money since that time is a subject for inquiry under such further proceedings as may be taken."

In re Stern (D. C.) 215 Fed. 979, was a proceeding to hold the bankrupt in contempt for not obeying an order to turn over assets previously found to have been withheld by him. Present ability to turn over the property was therefore a pertinent inquiry. It is not so in the instant case.

[2] While the burden of proof is primarily on the trustee to show that the bankrupt has not accounted for all his assets, yet, when it is established (admitted in this case) that the bankrupt had possession of the unscheduled assets very recently before the bankruptcy proceedings were instituted, a presumption arises that he still had them when such event took place, and the burden is shifted to the bankrupt to show why they were not scheduled and turned over. The bankrupt has not met this burden. He has introduced evidence tending to show what has become of the larger part of these moneys, but, as noted, he fails utterly to account for at least $6,000 of such assets. The referee was not much impressed by the testimony given by and on behalf of the bankrupt, even as to the specific sums of money said to have been disbursed by him, and which, as noted, leaves a large sum unaccounted for. He stated:

"There is no doubt that the testimony of the bankrupt, as well as many of his witnesses, revealed a most remarkable series of transactions, and it is very difficult for me to believe all of them to be true, and his conduct is certainly not that of a man who intends to deal fairly with all of his creditors, and it is very evident on his own showing that as to some of his creditors, namely, the ones he claims to have paid, that he intends to prefer them over his other creditors. His action also in making no record or memoranda of such large payments of money is most extraordinary, and to say the least is subject to grave suspicion. But in the last analysis, as this matter appears to me, it resolves itself into the proposition as to whether or not I am to believe, not only that the bankrupt, but also that a large number of his witnesses, perjured themselves on the witness stand. This would have to be my conclusion in the face of the fact that the trustee has not produced any rebutting testimony. I am asked to find that, because shortly before the bankruptcy the bankrupt had some $16,000 in cash in his possession, I must presume, irrespective of the testimony given by the bankrupt and other witnesses, that he still has the money in his possession. From the Stern Case, I do not understand that I have a right to presume that the bankrupt still has this fund. The trustee has persistently urged that the burden was upon the bankrupt to account for the money which he admits he had in his possession shortly prior to the bankruptcy. I fully agree with the trustee that the burden is upon the bankrupt, and the bankrupt has endeavored in a way, far from satisfactory, to sustain this burden; but I feel that he has done it to such an extent that I have no right to assume that his testimony and that of his witnesses was all false, and to assume that he still has in his possession the $16,000 sought by the trustee.

"Now, as to the second stage in the proceedings, just one word. It has not been shown by the trustee that the bankrupt is physically able to deliver to his trustee the cash or its equivalent in property, which the trustee seeks to recover. Here again the trustee claims that the burden is upon the bankrupt. The bankrupt's answer to this is, that he is employed by the O. Ricciardelli Company, and is working on a salary, and has no other property or means. The trustee might have produced evidence to show what the bankrupt's interest was in the O. Ricciardelli Company, and what, if anything, that interest was worth; but he has not done this.

"My conclusion, therefore, was that the trustee had failed to bring his case within the rules as laid down in the two cases herein above referred to. * * *"

From this expression of the view of the referee it is evident that he did not dismiss the trustee's petition because the bankrupt had satisfactorily accounted for the large sum of money withdrawn from the bank a short time before the commencement of bankruptcy proceedings against him, or because it was shown that the bankrupt was not then physically able to deliver such property, but because he could not say from the evidence that he still (at the time of considering the petition) had such moneys or any part of them. The referee failed to note the bounds of the present inquiry, and did not take account of the shifting of the burden of proof. As it was no part of the duty of the trustee in the initial proceedings to show that the bankrupt, after the estate was put into bankruptcy, still possessed or controlled the assets thus unaccounted for, the dismissing of his petition because of a failure of proof in that respect was error. It follows that the order dismissing the trustee's petition must be reversed.

The proceedings under review are remanded to the referee, with direction to take such steps as shall be consistent with the view here expressed. If desirable, further testimony may be taken by the trustee and the bankrupt.