# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,   :
Department of Environmental   :
Protection,   :
                      Petitioner   :
  :
        v.   :
  :
Service Station Co. Inc. 1324 d/b/a   :
Fulton's Service Station,   :
               Respondent  :         No. 214 M.D. 2023

BEFORE:   HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE WALLACE                     FILED: August 5, 2025

By July 24, 2025 Order, the Court denied without prejudice the Commonwealth of Pennsylvania, Department of Environmental Protection's (Department) uncontested June 3, 2025 "Application for Leave of Court to Conduct Discovery" (Application) for information relating to Service Station Co. Inc. 1324 d/b/a Fulton's Service Station's (Corporate Respondent) and Robert J. Fulton's (Fulton)[1] present "ability to pay/comply" with the Court's July 14, 2023 and August 15, 2024 Orders. The Court ultimately found that obtaining discovery on this issue

---

[1] Per the Court's August 15, 2024 Order, Corporate Respondent remains in civil contempt of this Court's July 14, 2023 Order, which enforced the Department's administrative order directing Corporate Respondent to close underground storage tanks on its property. In this Order, the Court identified Fulton as Corporate Respondent's owner and the owner/responsible party of the underground storage tanks in question. *See* Cmwlth. Ct. Order, 8/15/24, ¶3 (citing DEP's admitted Contempt Hearing Exhibit DEP-1, which included the Department's Registration/Permitting of Storage Tanks form, reflecting an "owner's certification," signed by Robert J. Fulton, Jr.) *See also id.* (reflecting that DEP's admitted Contempt Hearing Exhibit DEP-2, which included the July 11, 2023 stipulation signed by Fulton, establishing his ownership of the storage tanks).

would not "materially advance" the Department's November 15, 2024 "Certification of Noncompliance," and January 16, 2025 "Petition for Contempt," the latter of which seeks, *inter alia*, the incarceration of Fulton for Corporate Respondent's alleged failure to purge.[2] Now, the Court provides the reasoning for its denial, and issues a revised hearing notice via Memorandum and Order, along with financial affidavit forms directed to Corporate Respondent and Fulton personally, in advance of the upcoming August 19, 2025 hearing.

The Court has been considering the level of due process owed in civil contempt proceedings. On April 1, 2025, the Court held a status conference with the parties, during which the Court invited Fulton to participate in the status conference because of the potential consequences to his personal liberties. *See* Contempt Order, 8/15/24, ¶10 (cautioning that Fulton could be incarcerated for Corporate Respondent's failure to purge itself). Thereafter, the Court entered an April 4, 2025 Memorandum & Order, directing the parties to prepare and file memoranda of law on several issues relating to civil contempt. Only the Department filed a May 22, 2025 "Pre-Hearing Memorandum of Law" (Memo), which averred, among other positions, that the burden of proving the ability to comply squarely rests with the contemnor[3] as an affirmative defense, and that neither the Department nor the Court can address the issue when it is not first raised by Corporate Respondent.[4]

The Court must now confront the question of which party bears the burden of proving the "ability" or "inability" to comply with the Court's orders. Following the status conference, our review of the Memo, and the Court's own

---

[2] *See Young v. Est. of Young,* 138 A.3d 78, 86 (Pa. Cmwlth. 2016) (plaintiff must make probable cause showing that discovery request "will materially advance a legally sufficient pleading").

[3] A person or artificial entity, such as a business that fails to comply with a court's order, may be held in "contempt" of court. A "contemnor" is the term used to describe a person or artificial entity (like a business) that has failed to comply with a court's order.

[4] Despite its firm position on this, the Department filed the Application solely as a precautionary measure to satisfy what it perceived as a desire from the Court to review evidence on the issue.

extensive research—including review of *Maggio v. Zeitz*, 333 U.S. 56 (1948), *Barrett v. Barrett*, 368 A.2d 616 (Pa. 1977), *Turner v. Rogers*, 564 U.S. 431 (2011), and *Commonwealth v. Diaz,* 191 A.3d 850 (Pa. Super. 2018)—the Court believes the "ability to comply" question is more nuanced than suggested by the Department and implicates due process concerns that raise a legitimate question as to the fundamental fairness of this Court's civil contempt procedure.

The Department's Memo properly identified *Barrett*, the seminal Pennsylvania Supreme Court case on the "ability to comply" question, which offers the "general rule" in civil contempt proceedings. *Barrett*, 368 A.2d at 621. The rule states as follows: the complainant bears the initial burden of proving contempt of this Court's order by a preponderance of evidence but the ability to comply is an affirmative defense that must be raised by the contemnor. *Id. Barrett* recognized, however, that the ability to comply issue may implicate greater due process considerations in certain circumstances.[5]

---

[5] *Barrett* also examines due process concerns connected to the ability to comply question when fashioning purge conditions, where the sanction carries the threat of imprisonment. *Barrett* states:

> where [ ], the court in civil proceedings finds there has been willful noncompliance with its earlier [ ] orders constituting contempt but the contemnor presents evidence of his present inability to comply. . . , the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced ***Beyond a reasonable doubt***, from the totality of the evidence before it, the contemnor has the present ability to comply.

368 A.2d 621 (emphases added). The court explained that the higher evidentiary standard of criminal law should apply "with regard to the issue of present ability" to comply with a court's order because "to condition a person's avoidance of or release from imprisonment on his performing acts beyond his power to perform is in effect to convert a coercive sentence to a penal one without the safeguards of criminal procedure. . . ." *Id.* (quoting Justice Black's concurrence in *Maggio*).

This relationship between due process and the ability to comply issue has been closely examined by other courts. In its landmark decision, *Turner*, which involved a civil contemnor's incarceration for failure to pay child support, the U.S. Supreme Court decided whether a constitutional right to appointed counsel exists within the Fourteenth Amendment during civil contempt proceedings for indigent contemnors that may be incarcerated. Applying the three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (the universal test to ascertain the fundamental fairness of a civil proceeding), the *Turner* court balanced the potential loss of personal liberties, the risk of erroneous incarceration, and the countervailing interests with or without adequate procedural safeguards. While the court declined to find a categorical right to appointed counsel, it "attach[ed] an important caveat, namely, that the State must nonetheless have in place alternative procedures that ensure a fundamentally fair determination of the critical incarceration-related question, whether the supporting parent is able to comply with the support order." *Turner*, 564 U.S. at 435.

The court held that three additional considerations, when taken together, carried the day in concluding that South Carolina's civil support proceeding was fundamentally fair. First, the "critical question" in a civil contempt proceeding—the contemnor's "ability to pay/comply"—is relatively straightforward (analogous to an indigency determination) and can typically be resolved without counsel. Second, both parties to the action were *pro se* persons, so affording counsel to one party may make the proceeding "*less* fair." *Id.* at 447 (emphasis in original). Third, the underlying state law contained four adequate, substitute procedural safeguards, which reduced the possible risk of erroneous incarceration.

The pre-existing state procedural safeguards were: 1) notice to the contemnor that the "ability to pay" is a "critical issue" in the contempt proceeding;

4

2) utilization of a form or equivalent to "elicit relevant financial information[;]" 3) an opportunity at the hearing for the contemnor to respond to statements and questions about her financial status; and 4) express findings by the court that the contemnor has the ability to pay/comply. *Turner,* 564 U.S. at 447-8. Because these safeguards had not been applied, the court vacated the incarceration as unconstitutional and remanded for proceedings consistent with its opinion. The court explicitly limited its holding to private persons, and did not expressly opine on the process owed in a proceeding where the government is a party or the case raised complex issues. *Id.* at 449.

In 2018, our sister court applied *Turner* to a civil contempt proceeding involving the Commonwealth's pursuit of incarceration for a civil contemnor's failure to pay court-imposed sentencing costs and fines. *See Diaz.*[6] Unlike *Turner*, *Diaz* found a right to counsel, under certain circumstances, under the Fourteenth Amendment where the court determines there is a "likelihood of imprisonment." 191 A.3d at 862. Similar to *Turner*, *Diaz* reviewed the pre-existing procedural safeguards in the underlying statutory framework (the sentencing code and rules of criminal procedure), which required the trial court to make express findings on the ability to pay before ordering incarceration. Because the trial court did not employ those safeguards, the court vacated the ruling and remanded for a hearing on the ability to pay, and, if the court were to decide there is a "likelihood of imprisonment," then counsel was to be appointed. *Id.* at 866.

These cases support that additional due process—beyond notice and the opportunity to be heard—are required for civil contempt actions, which may  result

---

[6] Although *Diaz* is not controlling in this Court, "where persuasive, [this Court is] free to adopt the Superior Court's reasoning." *Taylor v. Pa. State Police of Commonwealth*, 132 A.3d 590, 603 n.15 (Pa. Cmwlth. 2016). The Court finds *Diaz's* thorough review is persuasive here.

in incarceration. As was understood by the courts in those actions, and the underlying legislative frameworks at issue in both cases, "[f]reedom from bodily restraint lies at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992). By contrast, there are no pre-existing, substitute procedural safeguards in the underlying Storage Tank and Spill Prevention Act, Act of July 6, 1989, P.L. 169, *as amended*, 35 P.S. §§ 6021.101–6021.2104, the Department's attendant regulations, or the Pennsylvania Rule of Appellate Procedure 3761 (enforcement actions). Critically, however, although both *Turner* and *Diaz* remanded to the respective lower courts which had failed to employ additional statutory safeguards, neither court did so on the basis of a *statutory* violation, but a *constitutional* one.

While neither *Turner* nor *Diaz* expressly address the parties' respective evidentiary burdens, the Court interprets these decisions, along with *Barrett* and others, to read that in Pennsylvania, the "ability to comply" is an affirmative defense to be raised by the contemnor, but the Court must adequately place the contemnor on clear notice of its right to raise the defense. This Court reads *Turner* and *Diaz* to require additional due process (apart from counsel) to ensure the fundamental fairness of a civil contempt proceeding.

Next, the question must be answered of when such additional due process protections are owed. In both *Turner* and *Diaz*, the contemnor received the civil contempt sanction of incarceration, so the need for additional due process was an obvious link to the loss of personal liberties. In *Maggio*, however, when contextualizing the framework for contempt, the U.S. Supreme Court advised that incarceration runs through the lifeblood of every contempt proceeding:

> The trial court is obliged to weigh not merely the two facts, that a[n enforcement] order has issued and that it has not

> been obeyed, but all the evidence properly before it in the contempt proceeding in determining whether or not there is actually a present ability to comply and whether failure so to do constitutes deliberate defiance which a jail term will break.
>
> ****
>
> Such a careful balancing was said to be required in [enforcement] proceedings because 'coercive methods by imprisonment are probable and are foreshadowed.'[] Certainly the same considerations require as careful and conscientious weighing of the evidence relevant in the contempt proceeding. *At that stage, imprisonment is not only probable and foreshadowed —it is imminent.* And, without such a weighing, it becomes *inevitable.*

333 U.S. at 76-7 (emphasis added and footnote omitted). Thus, although incarceration ruminates in the background even at the initial proceeding (i.e., the enforcement stage), it is only at the contempt stage, where the dark shadow threat of jail reaches the light of day and can no longer be avoided.

The inherent and immediate nature of incarceration manifests in the present action as follows. Unlike *Turner* and *Diaz*, the respondent party here is a corporate entity. Certainly, a corporation cannot physically be jailed, so an incarceration sentence is served by the individual agents of the corporate entity. *See Commonwealth v. Shultz*, 133 A.3d 294, 317 (Pa. Super. 2016). Although only Corporate Respondent is a named party to this action, "individual corporate officers who knowingly violate a court order, are subject to civil contempt citations, "'*regardless of whether [corporate officers] were joined as parties.*'" *N. Strabane Twp. v. Majestic Hills LLC*, 329 A.3d 87, 104 (Pa. Cmwlth. 2024) (citation omitted; emphasis in original). Otherwise, "it would be impossible for a court to ever enforce an injunctive order against a corporation. . . ." *Id. See* Cmwlth. Ct. Contempt Order, 8/15/24, ¶3 (identifying Fulton as the owner/responsible party of the underground storage tanks).

7

The potent weapon of contempt must be employed by courts using the "least possible power adequate to the end proposed," so the Court must first sanction the entity (Corporate Respondent), before sanctioning the individual (Fulton). *See Dep't of Enviro. Prot. v. Cromwell Twp.*, 32 A.3d 639, 657 (Pa. 2011). Even though incarceration is not part of the particular stage before the Court, because the sanction against the corporate entity has not yet been effectuated (*e.g.*, in cases where the complainant only seeks fines or in an action where the first sanction is implemented against the business), the possibility of incarceration is still imminent. *See Maggio.* While it may not be employed at the *current* hearing, it remains a tool at the cusp of the court's fingertips throughout the contempt procedure, and may be utilized at the *next* hearing, if the prior sanction fails.

This is especially true in this case, as Corporate Respondent has not retained counsel (despite being afforded two continuances by the Court to do so), and has thus, never formally participated in the case. *See Smaha v. Landy*, 638 A.2d 392, 397 (Pa. Cmwlth.), *appeal denied*, 651 A.2d 546 (Pa. 1994) (requiring corporate actors to appear before court through counsel). The corporation/counsel rule exists for good reason. Certainly, a business that chooses to incorporate enjoys the benefits and carries the burdens of doing so. A request for an "indigent business *pro se* exception" has failed in other courts. *Beaudreault v. ADF, Inc.*, 635 F. Supp. 2d 121, 122 (D.R.I. 2009). The Court does not aim to test the veracity of this rule or to temper it—but instead, now holds that following *Turner* and *Diaz*, the Court must establish a provisional rule moving forward in this action, to engage with the Corporate Respondent in this proceeding.

Absent use of such a procedural safeguard, the Court may not otherwise hear from a representative of the business until the time arises for the corporate

8

individual to be sanctioned (who may appear *pro se* on his own behalf), <u>*after* the Court has adjudicated the business entity in contempt</u>. The critical question in civil contempt actions is a contemnor's ability to comply with a court's order. *See Turner,* 564 U.S. at 447. Some businesses are not able to afford counsel. Thus, to not offer each business the opportunity to colloquy with the Court on the limited issue of the business's ability to comply with the Court's Order—especially the purge conditions set by the Court's August 15, 2024 Orders, would afford less due process to certain businesses simply due to their solvency status. The interest at stake—loss of personal liberty—is too high not to provide this opportunity. *See Maggio*, 333 U.S. at 64-5.

Accordingly, because of the potential loss of personal liberties and contradicting risk of wrongful incarceration, *see Turner*, and the inherent and "imminent" threat of incarceration in contempt proceedings, *see Maggio*, and following the Court's review of the due process analyses of *Turner* and *Diaz,* including the "critical" question of the "ability to comply" in these proceedings, the Court hereby holds that the following additional due process comports must be afforded in this action moving forward.[7] The following due process protections appear to be required in every civil contempt proceeding, based on the Court's review of these cases, and should take effect upon the filing of a facially lawful contempt petition in this Court, regardless of whether the sanction sought is to be against a business or a person and regardless of whether the sanction is a monetary fine, incarceration, or otherwise.

---

[7] Single-Judge opinions of this Court, regardless of whether they are reported, are not binding precedent on the full Court but may be cited for their persuasive value. *See* Section 414(b) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(b).

1. Clear notice to Corporate Respondent, in the hearing notice, that its present "ability to comply" is a critical issue in the contempt proceeding;

2. The use of a form to elicit relevant financial information;

3. An opportunity at the hearing for Corporate Respondent to respond to statements and questions about its financial status, by producing a corporate officer, here, Fulton, to colloquy with the Court at the hearing about Corporate Respondent's present ability to comply, and permitting the Department to cross-examine Fulton; and

4. Express findings by the Court as to Corporate Respondent's ability to comply.

Certainly, the "inconvenience of being restrained of [one's] liberty," "[n]o doubt [ ] may be unpleasant," as "it is intended to be unpleasant. . . ." *In re Epstein*, 206 F. 568, 569–70 (E.D. Pa. 1913), *aff'd sub nom. Epstein v. Steinfeld*, 210 F. 236 (3d Cir. 1914). But a threat of restraint must always be constitutional. The Court believes it is not only appropriate, but required, to institute this procedure. It is neither a leap nor extension of the law, but brings this Court into compliance with the legal mandates of civil contempt proceedings. *See Simmons v. Clerk-Magistrate of Bos. Div. of Hous. Ct. Dep't*, 858 N.E.2d 727, 731 (Mass. 2006) ("Where [ ] a systemic issue affecting the proper administration of the judiciary has been presented, resolution of the issue by this court is appropriate and 'should not await some fortuitous opportunity of report or ordinary appeal.'").

This procedure will take place in this action, effective immediately. The parties will have the opportunity to file post-hearing memoranda of law on the due process owed to these proceedings. As the Court must first *implement* a sanction against Respondent Corporation, the Court will not consider sanctioning Fulton at *this* upcoming hearing. *See Cromwell*, 32 A.3d at 657. Should Corporate

10

Respondent fail to utilize these due process protections, the Court will proceed to an adjudication in its abstention.

_____

STACY WALLACE, Judge