---

In re TAFT.

(Circuit Court of Appeals, Sixth Circuit. December 1, 1904.)

No. 1,322.

1. BANKRUPTCY—REVISION IN MATTER OF LAW—PLEADING.

A petition to the Circuit Court of Appeals to revise in matter of law the proceedings of a district court in bankruptcy, under Bankr. Act July 1, 1898, § 24b, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432], should set out the facts or the findings of fact on which the matters of law sought to be reviewed arise.

2. SAME—PROPERTY PASSING TO TRUSTEE—FUND HELD BY BANKRUPT AS AGENT.

Where a live stock commission merchant, in contemplation of bankruptcy, placed in the hands of his attorney checks received for stock which had been consigned to and sold by him, which were deposited by the attorney in his own name, and kept separate from the general funds of the bankrupt, a consignor who can trace the proceeds of his stock to such fund is entitled to recover the same.

3. FACTORS—RELATION TO PRINCIPAL.

A custom among live stock commission men at a certain market to assume all risks of payment of the price by purchasers to whom they

---

¶ 1. Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.

sell does not convert them into buyers, but they remain agents for the consignors in the transaction, upon a del credere commission.

Petition for Review of Proceedings of the District Court of the United States for the Eastern Division of the Northern District of Ohio, in Bankruptcy.

Arnold Green, for petitioners.
Smith & Taft, for defendant.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is a petition to review an order made by the District Judge requiring the petitioner, as receiver in bankruptcy for the estate of W. F. Eirick, a bankrupt, to release all claim to a sum of money on deposit in a Cleveland bank to the credit of one W. H. Boyd. This fund was claimed by the receiver as a part of the general estate of the bankrupt. The question arose under a petition filed in the bankrupt proceedings by Sutliff & Gott, partners. This petition is made part of the petition filed in this court. Its substantial averments are that petitioners, who are dealers in live stock, had shipped to the bankrupt, W. F. Eirick, who was doing business in Cleveland, Ohio, as a live stock commission merchant, a car load of stock, to be sold by him as agent, and to remit proceeds of sale after deducting charges and commission. It is then averred that on the next day after the receipt of this consignment, being September 18, 1903, this stock was sold to three different purchasers; that one lot was sold to the Lake Erie Provision Company for $839.79, and that on the same day or the next this lot was paid for by the check of the purchaser, payable to the order of Eirick, for $1,706.04, being the price of petitioners' stock, included with the price of stock owned by other consignors, sold also by said Eirick; that another sale was made to a firm styled Swope, Hughes, Walz & Benstead for $98.53; and that this was paid for by a similar check, which included the price of petitioners' stock with the price of stock owned by another party. A third lot was also sold to still another purchaser, and paid for by a check for $67.42. It is averred that Eirick was insolvent when he received the stock so consigned to him, and knew it, but that petitioners did not know it. It is further averred that on the day the checks for these sales came to Eirick's hands he had determined to become a voluntary bankrupt, and that he did on September 21st file the petition upon which he was declared a bankrupt; that before filing this petition "he delivered said checks to one Wm. H. Boyd to be held by him in trust for the parties whose property he had sold, and for whom he had received said checks in payment thereof." It is then alleged that said Boyd deposited said checks to his individual credit with the Cleveland Trust Company, and that same had been collected by it. Petitioners on the 19th of September, hearing of the insolvent condition of said Eirick, demanded of both Eirick and Boyd the proceeds of said sales, less charges and expenses, but payment was refused. Petitioners claim the right to follow the proceeds arising from the sales of their stock, and therefore ask that the receiver be required to disclaim any interest in such proceeds. The receiver's

answer admitted the receipt of the stock of Sutliff & Gott by Eirick, who was an agent for the sale of live stock, but denies knowledge of the terms upon which said stock was consigned to him; admits that checks were given to Eirick for stock sold by him as alleged, but denies substantially every other allegation, and claims the proceeds of such sales as part of his general estate.

Upon the pleading and the evidence, the referee ordered the receiver to release all claim to $980.01 of the fund deposited by W. H. Boyd with the Cleveland Trust Company as attorney for the bankrupt, and that Boyd should pay over said sum to Sutliff & Gott. Upon a review of this decision by the District Judge, it was adjudged "that all the actions, findings, rulings, decisions, and orders of said referee in the premises be, and the same are hereby, in all things approved and affirmed," etc., "and stand as the order of the court." Inasmuch as our jurisdiction to review the orders of the bankrupt courts, under section 24b of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432], does not extend to any review of a finding or conclusion of fact, but is limited to a review of decisions of law made by the District Court, it becomes essential that we shall have presented to us, by such a petition for review, specific decisions of law made by the lower court by which the petitioners are aggrieved. It is therefore an elementary rule of procedure that the petition for a review shall set out the matters of law which we are asked to review. Courier-Journal Co. v. Schaefer-Meyer Co., 101 Fed. 700, 41 C. C. A. 614.

Having no authority to review a conclusion of fact, we must, if we can, discover the conclusions of fact upon which the District Judge made the order complained of, and review the questions of law necessarily raised and decided upon the facts so found. The District Judge, however, made no separate finding of facts, but affirmed the "findings" and "decisions" of the referee. The referee certified the whole of the evidence, instead of certifying a summary thereof, as he should have done under general order No. 27 (89 Fed. xi, 32 C. C. A. xxvii). Neither did he certify any particular facts as found by him, further than to certify that, upon the pleadings and evidence, "that the facts stated in said petition are true in part, to wit, so far as concerns the right of Sutliff & Gott to the release of all claims of the estate to the $980.01 of certain funds on deposit in the name of the bankrupt's attorney," etc. If true to the extent named, the facts alleged in the petition of Sutliff & Gott must be true, for all the purposes of the case. Neither shall we do the applicant any injustice if we accept this as a finding of the truth of the facts alleged in the petition, for the petition to the referee for a certificate upon which his order might be reviewed assigned it as error that the referee had found the allegations of the petition to be true, and had not found the allegations of the answer to be true.

Assuming, then, that the facts alleged in the petition of Sutliff & Gott are the facts upon which the order of the District Judge is based, we have a case of simple solution. The proceeds of the sales of the property of a number of consignors were placed by the bankrupt factor, who was but an agent for sale and collection of the price,

133 F.—33

in the hands of his attorney, on the eve of his bankruptcy, in order that the fund might be kept separate and apart from his general estate until the rights of the owners of the live stock so sold might be determined. The purchase money of the stock so owned by petitioners, and so sold for them by the bankrupt, is traced directly to this fund in the hands of Boyd. The object of the bankrupt in so placing the checks received by him for stock sold as a factor was to enable the consignors to trace the proceeds of sale made for them, and prevent, if possible, the consequences of a mingling of such proceeds with his own general estate. That the checks received by Eirick and placed in Boyd's hands included the price of stock sold for others than petitioner does not prevent the following of the fund. The whole fund is held in trust for the benefit of those who can show that the fund includes proceeds of particular sales made for them by the bankrupt as a selling agent. We need not speculate about the results if such proceeds had gone into the bankrupt's general account, for that is not the case here.

The real defense made by the bankrupt's receiver was that the contract under which this car load of stock was shipped to and received by the bankrupt was not the ordinary arrangement between an owner and a commission sales merchant. To make out this defense, it was shown that the custom of live stock commission men at Cleveland was to assume all the risks of the payment of the price by the buyer, and account to the owner, whether the price was collected or not. But such a custom would only convert the bankrupt into an agent upon a del credere commission. One who sells upon a del credere commission is supposed to receive an additional consideration for the risk incurred by guarantying the purchaser. He is at last nothing but a guarantor, and his relation as agent is not converted into that of a purchaser by the fact that his sales, under local custom, are del credere sales. The principal may sue the purchaser for the price, and in his own name. Story on Agency, §§ 33, 112; 2 Benj. Sales (Corbin's Ed.) § 1099, and notes; Morris v. Cleasby, 4 M. & S. 566.

There was no evidence tending to show that Eirick should become definitely and primarily the purchaser of this stock on arrival or upon a sale, other than is inferable from the evidence of a custom to assume liability for the price when a sale should occur. That is clearly not enough to convert such an agent into a buyer. The case is not at all like that of Arbuckle Bros. v. Kirkpatrick, 98 Tenn. 221, 39 S. W. 3, 36 L. R. A. 285, 60 Am. St. Rep. 854. The contract in that case transferred the title, and required the so-called factor to pay for them within 60 days, whether sold or not. Neither will a custom to "weigh to himself" hogs not sold on day of arrival convert a del credere commission into a sale on arrival. Whatever the effect upon live stock thus charged to himself on failure to find an early market, the custom can have no consequence in respect to the particular shipment here involved. These hogs were sold to a stranger, and not "weighed to" the factor for want of a buyer.

Order affirmed.