## In re THROCKMORTON.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1906.)

Nos. 1,450, 1,522.

**1. BANKRUPTCY—PETITION FOR REVIEW.**

On petition to the Circuit Court of Appeals to review orders of the District Court in bankruptcy proceedings, only questions of law arising out of the facts found or conceded can be considered.

[Ed. Note.—Appeal and review in bankruptcy proceedings, see note to In re Eggert, 43 C. C. A. 9.]

**2. SAME—REAL ESTATE—LEASING—ACTS OF TRUSTEES.**

At the time of a bankrupt's adjudication, certain of her real estate had been advertised for sale under an order of the state court, and was purchased at the sheriff's sale by F., who immediately leased the farm for $1,200 for the succeeding year. The sheriff's sale was not confirmed, and the land was finally sold by the bankrupt's trustees. On the appointment of the trustees F. turned over to them the tenant's note for the year's rent, and they ratified the lease, after which the tenant paid the note and raised a crop on the land of the value of $8,000. *Held*, that the trustees, after obtaining control of the land, properly ratified such lease as against the rights of the bankrupt.

**3. SAME—INTEREST IN LAND—STATE COURTS—JUDGMENT.**

Where, prior to the institution of proceedings in bankruptcy, the highest court of the state in which certain land belonging to the bankrupt was located, had held that W. had acquired title to an undivided one-fifth interest therein on foreclosure of a lien for attorney's fees, and the court in such action had jurisdiction both of the parties and subject-matter, such adjudication could not be collaterally attacked in the bankruptcy proceedings, and the trustees in bankruptcy therefore properly recognized W.'s interest in the land.

**4. SAME—SALES—PRICE—ADEQUACY.**

Where land in which a bankrupt owned an undivided four-fifths interest was appraised at $6,000, and the bankrupt's interest was sold for $4,600, the price was not so inadequate as to entitle the bankrupt to have the sale set aside.

**5. SAME—DUTY OF TRUSTEES—CONTINUANCE OF SUIT.**

Prior to a bankrupt's adjudication, she had contracted to exchange certain land free from incumbrances for 40 city lots. When the bankruptcy adjudication was made, the bankrupt's land was incumbered by a mortgage for $12,000 and a judgment lien for the services of an attorney. The owner of the lots refused to make the exchange, and the bankrupt had sued him to compel specific performance, in which he had answered that he owned more than the 40 lots in question, and that the contract did not specify which 40 he was to convey. *Held* that, a demurrer to such defense having been overruled, the trustees properly refused to prosecute the suit further.

**6. SAME—SALES—ACCEPTANCE OF BID.**

When certain of the bankrupt's real estate was offered for sale, she offered to bid $10,500, but, being unable to deposit $1,000 earnest money or pay the amount of her bid, the auctioneer did not receive or cry her bid, and finally sold the property to another for $10,354. *Held*, that such sale was properly confirmed nearly a month thereafter; the bankrupt having taken no steps in the meantime to make good her bid.

Petitions to Review Orders of the District Court of the United States for the Eastern Division of the Southern District of Ohio, in Bankruptcy.

149 F.—10

John Logan, for petitioner.
W. G. Hyde, for respondent.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. On January 7, 1904, Margaret Alice Throckmorton was adjudicated a bankrupt, and on January 27, 1904, Samuel T. Ruggles, Samuel W. Courtwright, and John Schleyer were appointed trustees of her estate. The principal property owned by the bankrupt was a farm in Pickaway county, Ohio, appraised at $17,000, free of dower, a farm in Ross county, Ohio, appraised at $10,- 500, subject to dower and homestead, after the homestead had been assigned, and six parcels of real estate in Connecticut, appraised at $30,287.50, free of dower. The farms in Pickaway and Ross counties, Ohio, and one parcel of the real estate in Connecticut, have been sold. Each step taken by the trustees in the administration and disposition of this property has been assailed by the bankrupt, first before the referee, and then before the court below, and vigorous efforts have been made to have the trustees removed. Numerous petitions have been laid before us to review the orders of the court below sustaining the referee and the refusals of the court below to remove the trustees. In this connection, we have been urged, not only to consider questions of law not arising out of any facts either found or conceded, but also questions of fact involved in the finding or order sought to be reviewed. Obviously our jurisdiction is restricted to matters of law, and the legal questions we can examine are only those which arise out of the facts found or conceded. In re Taft, 68 C. C. A. 385, 133 Fed. 511; First Nat. Bank v. Title & Trust Co., 198 U. S. 280, 291, 25 Sup. Ct. 693, 49 L. Ed. 1051. Bearing this in mind, we shall take up the matters sought to be presented so far as they seem to merit consideration.

1. At the time of the adjudication, January 7, 1904, the farm in Pickaway county was being advertised for sale upon an order issued by the common pleas court of that county. It was purchased at the sheriff's sale by a Mr. Foresman. Pending the action of the court on the report of the sale, Foresman leased the farm to one William Cross for $1,200 for a year, from March 1, 1904, to March 1, 1905. The sale by the sheriff was not confirmed, and the land was finally sold by the trustees on December 5, 1904. Upon the appointment of the trustees, Foresman turned over to them the note for $1,200 for the year's rent, and they ratified the lease to Cross. Cross paid the note and was permitted by the trustees to raise and harvest a crop on the farm. On November 17, 1904, before the crop was harvested, the bankrupt filed a petition setting forth the lease to Cross, averring that the crop was of the value of $8,000, that the farm had been advertised for sale without the crop by the trustees, and asking that they be ordered to retake possession of the farm, take possession of the crop, and stop the sale until this should be done. It was charged that there was fraud and collusion between the trustees and Foresman and Cross. The matter came before the lower court, first on a demurrer to the petition, which was sustained, and then, as the record shows, on a consideration of the facts; the entry being:

"On consideration of the allegations of the petition, the facts shown by the record of said proceedings, the statements of the counsel for said parties, and facts relating to said petition and its allegations, within the knowledge of the court and by the court, the court doth find the allegations of said petition not true, and doth dismiss said petition."

There is nothing for us to review in this order. If the petition contained any facts entitling the petitioners to the relief sought, and we agree with the court below that it did not, we must conclude from the entry that the court below found them to be untrue. We have no power to review its action in that regard. Upon the merits, so far as the facts appear, we think the trustees did the proper and prudent thing in renting the farm to Cross under the circumstances. If they had not, there would have been no crop raised and no rent paid.

2. Prior to 1898, the Connecticut land, consisting of six tracts or parcels, belonged to John I. Throckmorton, the husband of the bankrupt. He took advantage of the bankrupt act in 1899, but on March 5, 1898, through one Bacon Wakeman, a member of the bar at Bridgeport, Conn., he conveyed the undivided four-fifths of this real estate to his wife, Margaret Alice Throckmorton. On March 12, 1898, the two, John I. Throckmorton and Margaret Alice Throckmorton, gave a mortgage on the real estate to the Bridgeport Savings Bank for $12,000. On March 24, 1898, Bacon Wakeman, claiming that John I. Throckmorton was indebted to him for legal services, sued out an attachment upon John I. Throckmorton's remaining interest in the land. It is out of this attachment, and the subsequent legal proceedings to enforce it, that the next question arises.

On November 29, 1901, Wakeman recovered a judgment against John I. Throckmorton for $827.69, to be satisfied only out of the interest Throckmorton had at the time of the attachment in the real estate. On February 20, 1903, Wakeman began an action in the court of common pleas of Fairfield county, Conn., to foreclose his judgment lien on the premises attached, and on March 10, 1904, a judgment of foreclosure was entered, after a hearing upon the answers of John I. Throckmorton and the bankrupt. The bankrupt was given until July 5, 1904, and John I. Throckmorton until July 7, 1904, to redeem the premises. But they did nothing. When the trustees attempted on December 14, 1904, to sell the Connecticut land, they found Wakeman insisting that by a strict foreclosure of his judgment lien he had secured title to the undivided one-fifth interest which John I. Throckmorton owned at the time of the attachment. As a result, while one of the tracts was sold at the first sale, a matter we shall refer to hereafter in another connection, the order of sale was subsequently modified so as to authorize the trustees to offer, not the whole, but only the undivided four-fifths interest, in the land. This modification was based upon the finding of the referee that Wakeman by his strict foreclosure had secured the one-fifth interest in the real estate.

This order, the recognition of Wakeman's interest on which it was based, and the action of the trustees in giving it effect, are vigorously assailed. The main assault is naturally made upon the decision of the Supreme Court of Errors of Connecticut, in the case of Wakeman v. Throckmorton, 74 Conn. 616, 51 Atl. 554, decided March 5, 1902.

**148**                    **149 FEDERAL REPORTER.**

A learned argument has been made designed to show that the highest court of Connecticut erred in deciding this case in favor of Wakeman. We are not disposed, under the circumstances, to enter into a discussion of the Connecticut law regulating the taking and foreclosure of liens of this character upon real estate in that state. It is enough to say that it appears in the case mentioned that the Connecticut courts had jurisdiction of the parties and the subject-matter of the action, and that the highest court in that state, in a well-considered opinion, decided the controversy in favor of the validity of Wakeman's claim. We have no authority in a collateral proceeding to set at naught this adjudication. We approve of the action of the court below sustaining the referee's recognition of Wakeman's interest in the Connecticut land, and find no cause to criticise the trustees for pursuing the course they did with reference to it.

3. At the sale on December 14, 1904, the so-called "first tract" of the Connecticut land was sold to D. Fairchild Wheeler at his bid of $4,600. This sale was set aside by the referee, but the court below, upon a petition for review, reversed the referee and confirmed the sale for a four-fifths interest in the tract; that being all the trustees could sell in view of Wakeman's interest. We are now asked to review and reverse the court. We question whether, in this connection, there is any matter here for review; but, if there were, we would not interfere with the discretion exercised by the court below. The tract was appraised at $6,000, and four-fifths of it sold for $4,600. This was not a bad sale as such sales go, and it does not appear that any better offer has been made.

4. Prior to the adjudication, Margaret Alice Throckmorton entered into a contract to exchange the first tract of the Connecticut land to Benjamin Monnett, of Columbus, Ohio, for 40 of the lots the latter had laid out in a suburb of that place. The contract provided that she should convey the Connecticut land in fee simple, free of incumbrance, and that Monnett should secure her a loan of $8,000 on the Columbus lots. When she became a bankrupt, this land was incumbered by a mortgage of $12,000 to the Bridgeport Savings Bank and by the judgment lien of Wakeman. Before this Monnett refused to make the exchange, and she had sued him to compel a specific performance. This suit was pending when the trustees were appointed. Monnett's answer set up three defenses; the third being that he owned more than 40 lots, and the contract did not specify which forty he was to convey. A demurrer to this defense was overruled. Afterwards the trustees declined to prosecute the suit further, because they did not believe they could successfully maintain it. We think in this they did right. Even if the contract could have been made certain, so as to ascertain which 40 lots Monnett had agreed to convey, still the Connecticut tract was incumbered to such an extent, not only by the $12,000 mortgage to the Bridgeport Savings Bank, but also by the recognized claim of Wakeman to an undivided one-fifth interest, that it was impracticable for the trustees to comply with the terms of the contract on the part of the bankrupt. At any rate, under all the circumstances, they should have been allowed some discretion, and the decision they reached met with the approval of the court below.

5. When the Ross county farm was offered for sale the second time, the bankrupt offered to bid $10,500 for it. She did not at that time have the money to comply with the terms of the sale, by either making the deposit required by the trustees of $1,000 earnest money, or by paying the amount she bid. The auctioneer, not deeming her responsible, did not receive or cry her bid, and the property was knocked down to Milton S. Bartholomew for $10,354. This was on the 18th of September, 1905. The sale was reported on the 21st of September. On the 7th of October the referee confirmed the sale to Bartholomew, finding that neither at the time of the sale, nor since, had the bankrupt been able to comply with the terms of the sale and make her bid good. We are at a loss to comprehend what reason can be given for reversing the action of the referee or that of the court in sustaining it. The referee gave the bankrupt every opportunity to make her bid good, and it was only when she failed to do so that the sale to Bartholomew was confirmed.

6. The action of the court below in declining to remove the trustees meets with our hearty approval. The charges against them do not merit discussion.

The orders and judgment of the lower court are affirmed.