### FREDERICK v. SILVERMAN.

(Circuit Court of Appeals, Third Circuit. April 2, 1918.)

#### No. 2346.

1. BANKRUPTCY ⟟136(2)—TURNOVER PROCEEDINGS—CONTEMPT PROCEEDINGS.
   In a turnover proceeding the issue is whether the bankrupt had property within his possession or control at the date of the bankruptcy, which he retained and concealed from his trustee; but in contempt proceedings for failure to comply with an order directing the bankrupt to turn over property to the trustee, the only question is whether the bankrupt is personally able to comply with the order previously made.

2. BANKRUPTCY ⟟446—PETITION TO REVISE.
   Where disputed questions of fact were involved on the turnover proceeding, an order modifying the referee's order cannot be reviewed on petition for revision in matters of law, under Bankruptcy Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (Comp. St. 1916, § 9608).

Petition for Revision of Proceedings of the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

In the matter of the bankruptcy of Benjamin Silverman. Petition by Elliott Frederick, trustee, to revise orders modifying and reversing parts of two orders of the referee directing the bankrupt to turn over certain property which he had concealed from his trustee, and finding him guilty of contempt for failure to comply. Petition to revise dismissed.

Weil & Thorp, of Pittsburgh, Pa. (S. Leo Roslander and George K. Warn, both of Pittsburgh, Pa., of counsel), for petitioner.

Simon Sher, of Pittsburgh, Pa., for respondent.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This case when argued presented many difficulties, due, we now find, to confusion in the proceedings below and to misapprehension of what may be reviewed on petition to su-

perintend and revise. A statement that removes the confusion will dispose of the case.

The matter is here on one petition to revise two orders of the District Court affirming, modifying, and reversing parts of two orders of a referee in bankruptcy, by which the referee directed,—firstly, that the bankrupt turn over certain property which he had concealed from his tustee; and, secondly, that he be held guilty of contempt for failure to comply with the order to turn over.

On July 18, 1916, Silverman was adjudged a bankrupt. On October 5, the trustee filed with the referee a petition charging that the bankrupt had concealed certain of his property and asking for a rule upon the bankrupt to show cause why he should not deliver the same to him. After extended hearings, the referee, on March 2, 1917, made a report in which he found that "the bankrupt should be ordered to deliver to the petitioner, the trustee, the diamond stud mentioned in the petition, or its value, $1,000.00, and also to pay [him] the sum of $582.65." Exceptions to the report and a petition for rehearing were filed by the bankrupt and a petition for review was filed by the trustee.

Having granted a rehearing, the referee, on April 19, filed a second report sustaining the first, and, on June 2, he entered an order in accordance therewith. This is referred to generally as "the turnover order."

On June 21, the referee certified to the District Court, for its opinion, the questions he had decided by his turnover order. Two days later, that is, on June 23, and before the District Court had had an opportunity to hear and decide the questions certified, the trustee filed a petition in the District Court, wherein (after reciting the turnover proceeding before the referee and the resulting order) he charged that the bankrupt had refused and neglected to obey the referee's order, and prayed for a rule to show cause why the bankrupt should not be adjudged in contempt. The bankrupt made the same answer to this rule as he had made to the rule instituting the turnover proceeding, which was, that he had lost the diamond prior to his adjudication, and that, not having it, he could not in the first instance conceal it, and he could not in the second instance turn it over.

The rule and answer in the contempt proceeding were then referred to the referee. On July 31, the referee made a report on the reference, wherein he first adverted to his turnover order of June 2 (which was still before the District Court on his certificate), and recommended that the order be amended by reducing the sum to be paid from $582.65 to $182.65, and by ordering the bankrupt to turn over the diamond stud, without, in the alternative, allowing him to pay $1,000 as its value. Following this recommended amendment to his turnover order, which, as we have said, had not received the consideration or decision of the District Court, the referee at the same time and in the same report recommended that:

"An order should be made on the bankrupt to comply with the order of the referee dated June 2, 1917 (which in effect was a recommendation that the court approve his turnover order), or, in the case of continued disobedience thereto, that he should be punished for contempt."

On exceptions liberally and promiscuously noted by both the trustee and bankrupt, these two proceedings came before the court for the first time. What did the court find in the record? It found, first, a turnover order made by the referee, the questions in which had been certified to but had not been considered by the court. It found a contempt proceeding instituted in the court against the bankrupt for failing to comply with the referee's undetermined turnover order. It found also a referee's report in the contempt proceeding recommending the bankrupt's imprisonment for failure to comply with the turnover order, which had not received the approval of the court. It found further that the referee had changed and amended his turnover order in the very report in which he recommended the bankrupt's imprisonment for failure to comply with the order when amended.

What was the court asked to do? The bankrupt asked the court to find on the facts against the referee's turnover order holding that he had retained and concealed property, and against the referee's report on the contempt proceeding holding that he was presently able to comply with the turnover order. The trustee insisted, on the other hand, that as the bankrupt had not appealed from the referee's order in the turnover proceeding, that order was conclusive upon the bankrupt, and, therefore, he could not be heard to say in the contempt proceeding that he did not have the property which the referee had found in the turnover proceeding that he had; that the court could not go behind the referee's turnover order and retry the issue upon which that order was based; that, therefore, the only matter for the court's consideration in the contempt proceeding was the present ability of the bankrupt to comply with the turnover order; and, finally, that the referee could not amend his turnover order by reducing the amount to be paid and by taking from the bankrupt the alternative of delivering the stud or paying its value in money.

What did the court do? It proceeded first of all to dispel the confusion by establishing an orderly record. This the learned trial judge did by deliberately separating the turnover proceeding from the contempt proceeding. He then took up the two proceedings one at a time in the order in which they should have been brought and decided, and he disposed of them one at a time upon the issues raised in them respectively.

[1] In doing this the learned trial judge was moved by the practical consideration of disentangling what appeared to be a hopelessly involved record, and also for the very proper purpose of hearing and determining the two proceedings, when separated, according to the rule applicable to such cases announced by the District Court of the United States for the Eastern District of Pennsylvania and approved by this court. In re Epstein (D. C.) 206 Fed. 568; Id., 210 Fed. 236, 127 C. C. A. 54. In that case the court clearly distinguished between turnover proceedings and proceedings in contempt for violating a turnover order, by distinguishing the issues involved in the two proceedings. It held, in substance, that in a turnover proceeding the issue is whether the bankrupt had property within his possession or control at the date of bankruptcy which he had retained and concealed from his trustee.

Being fundamental, this issue must be raised and decided first. When the court has determined this issue against the bankrupt, and when the bankrupt has failed to comply with the court's order to turn over, the next proceeding is one of contempt. In the contempt proceeding, the question of the bankrupt's possession and concealment of property having previously been determined is not in issue. The only question is, whether the bankrupt is presently able to comply with the court's order previously made, and, accordingly, whether he is defying its order. The difference in the issues of the two proceedings and the dependence of the latter upon the former compel their separate consideration and determination. This is what the learned trial judge did in this case. He first reviewed the referee's turnover order on the issue of property retained and concealed by reviewing the facts on which it was based. He found that the bankrupt did not have the diamond stud at the date of bankruptcy, and that, in consequence, he did not conceal it from his trustee. The judge, thereupon, reversed that part of the referee's order directing the bankrupt to turn over the stud (which order was before him on the referee's certificate), and affirmed the part directing payment of a reduced sum of money (considered on the trustee's exception of September 6).

After deciding all matters arising in the turnover proceeding, the trial judge then turned to the contempt proceeding. Having already found in the former proceeding that the bankrupt did not have and therefore did not conceal the diamond stud, he, of course, had to find in the contempt proceeding that the bankrupt was not guilty of contempt for not turning over what he did not have.

The judge thereupon dismissed the contempt proceeding on payment by the bankrupt of the small money balance found due in the first phase of these double proceedings.

[2] On petition to superintend and revise, the trustee now asks this court to reverse the action of the trial judge in both proceedings. Obviously this court cannot review and revise an approved turnover order made in a proceeding, where, as in this one, disputed questions of fact were involved. An order so made cannot be reviewed by a Circuit Court of Appeals on petition for revision in matters of law under section 24b of the Bankruptcy Act (Comp. St. 1916, § 9608). Ross v. Stroh, 165 Fed. 628, 91 C. C. A. 616; Ellis v. Krulewitch, 141 Fed. 954, 73 C. C. A. 270; Moore Dry Goods Co. v. Brooks, 240 Fed. 943, 153 C. C. A. 629; In re Throckmorton, 149 Fed. 145, 79 C. C. A. 15.

Nor do we find anything to revise in the contempt proceeding. Having approved the reduction of the sum to be turned over (which was promptly paid), and having decided that the bankrupt did not have and therefore did not conceal the diamond stud, there was left no order which the bankrupt could defy. Dismissal of the contempt proceeding followed necessarily.

The trustee's petition to revise is dismissed.