## In re GERSON.

District Court, E. D. Pennsylvania. September 17, 1929.

No. 11049.

Leon H. Fox and Martin Feldman, both of Philadelphia, Pa., for creditors.

Maxwell Strawbridge, of Norristown, Pa., for bankrupt.

DICKINSON, District Judge. There were three orders in this cause:

1. Allowing claim to exemption.

2. Refusing turnover order.

3. Recommending dismissal of specifications of objections to discharge of bankrupt.

They all turn upon the same fact finding based upon the same evidence. The fact finding is, in substance, that the bankrupt has withheld from the trustee bankruptcy assets which should be applied to the payment of his debts, but there is no evidence of in what such assets consist. There are some broad comments which are called forth by cases of this general character. A debtor who seeks to escape the obligation of debt by recourse to bankrupt proceedings is bound to surrender to his creditors all his property save only that to which he can lay claim as lawfully exempt from the levy of an execution. He has in consequence no just cause of complaint, if a close inquiry is di-

rected to the assets which should go to the trustee. On the other hand, the price which creditors pay for the exercise of the power to force their debtor into bankruptcy is that thereafter he should be relieved of the obligation of debt unless he has forfeited this right by some misconduct which is a legal obstacle to his discharge. Hence Congress adopted the policy of casting upon creditors the burden of proving such obstacles to exist, but made no distinction between voluntary and involuntary bankruptcies. Every bankrupt has in consequence a right to his discharge "unless." It further follows that, if this bankrupt has no right to his discharge because there is legal proof of his unlawful retention of assets which he should turn over to his trustee, he has no just claim to his exemption, and should be required to turn over what it is proved he is unlawfully withholding.

■ The evidence against the bankrupt may be simply stated. It is that he had assets which may be described as of the value of $10,000; that he subsequently purchased merchandise to a cost price value of $12,161.49 or aggregate assets of $22,161.49. These facts have been found by the learned referee as referee and as special master and are not in controversy. The only inquiry left is what became of this property. Some of it passed into the hands of the trustee. When a comparison is attempted between the estimated or cost price value of anything and its value as evidenced by an appraised or sale price value, a conclusion reached from such a contrast that because the first sum was greater than the second the difference means that some of the property had disappeared would not ordinarily be justified. A shrinkage in the number or bulk of physical things is one thing; a shrinkage in their so-called commercial value is quite another. Here, however, there is no attempt to account for the difference in the contrasted sums by any difference in valuations. It is conceded that there is a marked difference in the merchandise, the possession of which is traced to the bankrupt and what came to the possession of the trustee. The difference is sought to be accounted for by an explanation of what became of the property which the difference represents. Here the proofs approach if they do not disappear in vagueness.

The learned referee finds the explanation offered by the bankrupt to be very unsatisfactory. The proofs of concealment of assets rest solely upon an accounting basis. This is likewise unsatisfactory as evidence of what the bankrupt has concealed. The accounting figures are definite to a cent. The shortage is $15,361.49. No one, however, could, with any feeling that the order was just, send the bankrupt to jail until he had paid any such sum of money. The learned referee so felt, and we think he was fully justified in his refusal to find that the bankrupt had concealed $15,361.49 or property represented by any such sum. His state of mind evidently is a willingness to find that there is an unexplained and unaccounted for discrepancy between what the bankrupt should have had in stock and what he turned over to his trustee, but what it was or its value cannot be found. This state of mind he translated into the refusal of a turnover order, the allowance of the claim for exemption, and as special master a recommendation of the dismissal of the specifications of objection to the bankrupt's discharge.

■ We have no inclination to disturb (unless the reasons for so doing are exceptional) the findings of fact made by a referee or special master. No mere difference of view (even if it existed) would warrant an interference with the special function of any fact finding tribunal. We in consequence accept the fact findings as made.

■ The only inquiry in further consequence is into whether these fact findings support the legal conclusions reached. The referee's inability to affirmatively find what property the bankrupt had withheld from the trustee logically supports a refusal to make a turnover order, but does it support the bankrupt's right to his discharge or to his claim of exemption when possession of property has been traced to the bankrupt, and the value of the property so traced is found to exceed $300? The policy of the Bankruptcy Law (11 USCA) undoubtedly is, as already stated, to give to the bankrupt his discharge unless he has been guilty of one or more of the enumerated acts, any one of which is an obstacle to his discharge. This is the view entertained by the referee, and thus far he is right. We think, however, he has inadvertently overlooked the provision in the amendment of May 27, 1926, 11 USCA § 32(b) (which we assume applies) which is aimed at the very fact situation here presented. There is certainly here "reasonable grounds to believe" that the bankrupt had withheld property from his trustee. The amendment in such case casts the burden upon the bankrupt to show his innocence or be refused a discharge. Likewise the law of Pennsylvania does not contemplate that a debtor who has in his hands more than $300 worth of property which he is fraudulently withholding

from his creditors shall by law be allowed to withdraw $300 more.

We interpret the fact findings of the referee to mean that the bankrupt has had traced to his possession property for which he should account to the trustee, and that the value of this exceeds $300. A turnover order was refused because the referee is unable to find under the proofs submitted what property the bankrupt is to be ordered to turn over. Formal orders may be submitted as follows:

1. An order dismissing the petition for a review of the order of the referee denying the issuance of a turnover order.

2. An order reversing the order of the referee allowing the claim for exemption and directing that the claim be disallowed.

3. An order sustaining the exceptions to the report of the referee as special master, and refusing the bankrupt's discharge.