## In re GINSBURG et al.

District Court, S. D. New York.
March 24, 1931.

Krause & Hirsch, of New York City, for trustee, Irving Trust Co.

H. & J. J. Lesser, of New York City (Jacob J. Lesser, of New York City, of counsel), for bankrupts.

PATTERSON, District Judge.

This is a petition to review an order of Peter B. Olney, Jr., referee, directing the bankrupt Julius Ginsburg to turn over to the trustee in bankruptcy underwear, gloves, and dry goods of the value of $13,424.86. The propriety of the order is attacked by the bankrupt.

The bankrupts, mother and son, were partners engaged in selling underwear, stockings, gloves, and various notions. The son, who is the present respondent, was in sole charge of the business. A voluntary petition in bankruptcy was filed on September 7, 1929. A few months later the trustee commenced this proceeding, charging that Ginsburg had in his possession merchandise worth $43,-882.63 belonging to the bankrupt estate. This figure was arrived at from the firm's books and financial statements, of which the trustee made proof, in the following manner: A financial statement signed by Ginsburg gave the inventory on January 1, 1929, at $57,630.45. To this was added the purchases in 1929, shown by the firm books as $69,601.-32, making an aggregate of $127,231.77. From this there were deducted the following items: Sales during 1929, $78,761.20; merchandise on hand at bankruptcy, $1,443.89; pledged goods, $3,144.05. The aggregate deductions were $83,349.14, and the shortage was $43,882.63. The trustee also offered evidence tending to show that the decline in values of goods of this sort from January to September, 1929, was from 3 to 5 per cent.; one witness put it as high as 10 per cent.

To account for the shortage, Ginsburg testified to an inflation of the January inventory and to sales at a loss. As to the inventory figure, he first defended it, but finally claimed that the fair market value of the stock in January was only 75 per cent. of the figure shown in the financial statement. As for losses in sales, he listed quite a number on which the total loss was $3,808.94, adding that there were more which he had not figured up, although he was given access to the books. He also testified to trouble with marshals who were making levies in the last few months.

The referee stated that Ginsburg did not impress him favorably, and that the attempted explanation of the shortage was unconvincing. He nevertheless gave Ginsburg the benefit of the doubt on each disputed item where his testimony was at all specific. He took 25 per cent. off the January inventory, although Ginsburg himself had claimed for some time that the financial statement was true. He allowed a 10 per cent. depreciation on all goods; this being the highest estimate of the 1929 decline in market values. He accepted Ginsburg's testimony as to the losses on specific sales and in one case an estimated loss. The only matters in which he refused to follow Ginsburg were in his blanket denial of concealment and in his vague claims of sales at a loss. With the allowances made by the referee, he arrived at an unexplained shortage of $13,424.86, which he ordered Ginsburg to turn over.

In my opinion, the order of the referee is sustained by the proof. It is contended in behalf of Ginsburg that the proof offered by the trustee was not of the clear and con-

vincing character required in such cases, and that the referee disregarded the rule laid down in Oriel v. Russell, 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. 419. The criticism is made that the case against the bankrupt was built up solely by an accountant. But the figures used by the accountant, except for the trifling value given to the goods passing to the receiver, were the bankrupt's own figures, and the calculation was not a complex one. I do not regard the Oriel case as discountenancing proof of this kind or as requiring from now on the testimony of unimpeachable eyewitnesses who saw the bankrupt removing his goods by stealth. The proof furnished by the trustee was of the same character as that heretofore given in many cases in this circuit, where turnover orders were issued, and the general rule here has for many years been the same as that recently laid down by the Supreme Court in the Oriel Case—proof of a clear and convincing character, a mean between the extremes of mere preponderance and proof beyond reasonable doubt. I think that the referee gave full effect to the Oriel Case when he went along with the bankrupt as to every matter in which the latter gave any tangible figures tending to explain the large discrepancy, and this despite the poor opinion which he had formed of the bankrupt's credibility.

The petition to review the order will therefore be dismissed.