## GOLDMAN et al. v. SKLAR.

### No. 5423.

Circuit Court of Appeals, Third Circuit.

May 16, 1935.

David S. Malis, of Philadelphia, Pa., for appellants.

Josiah H. Marvis, of Philadelphia, Pa., for appellee.

Before DAVIS, Circuit Judge, and JOHNSON and CLARK, District Judges.

CLARK, District Judge.

This court permitted the filing of a typewritten record in the case at bar. Having now read that record, we are of the opinion that that was mistaken generosity on our part. The order appealed from is one of the turnover orders with which our modern bankruptcy practice is so well supplied. The learned referee ordered the return of 34,406⅛ yards of silk, or its equivalent in cost value of $12,498.-82, and 4,077½ dozen felt hat bodies, or its equivalent in cost value of $13,761.61. He filed with the order one of the most thorough and intelligent analysis of testimony that it has been our pleasure and privilege to peruse. The learned judge in the court below agreed with that analysis. We agree with it.

The bankrupts might be described as "capitalists." They had no personal knowledge of or skill in the business that failed, but left the manufacture of the hats to their foreman, one Slutzkin. They did, however, seem to have considerable skill in obtaining credit. At any rate, the bankrupt partnership bought $68,919.86 worth of merchandise "on tick" within the four months preceding the filing of the petition. We pass over the ethics indicated by their admission that they knew at the time of this purchase that they were sinking into the quicksands of insolvency, and that they were, therefore, "compelling" their creditors to invest in a failing enterprise.

Such an "involuntary investment" is bad enough in any case. It is much worse when the investment disappears leaving no quid pro quo. Such a disappearance would excite the suspicion of the most ingenuous trustee. It is not surprising, therefore, that the trustee in the principal case demanded a satisfactory explanation of the fact that only approximately $3,000 worth of felt hat bodies and silks remained out of the original $68,919.86. That explanation has never been forthcoming, and these proceedings are the result.

The trustee employed a reliable accountant to examine the books and investigate the affairs of the bankrupt firm. That accountant established from the original invoices the number of hat bodies and the yardage of silk purchased between June 1, 1931, and September 26, 1931. These invoices showed 9,075½ dozen hats and 39,587⅛ yards of silk. The bankrupts do not dispute these figures. They are hardly in a position to do so, inasmuch as they had themselves entered them in their books.

The bankrupts insist that in some mysterious way the accountant erred in his allowance of credits. This insistence is in no way affirmative. In other words, no attempt is made to show that certain hats were sold to certain named firms or individuals, or that certain silk was used on such hats. It is confined to the assertion that the accountant relied upon the bankrupts' own foreman, and that the latter's recollection was imperfect. The only trouble with this position is that it happens to be contrary to the actual findings of the learned referee.

The latter credited the bankrupts with all the hats sold during the accounting period, and expressly did not accept the trustee's claim, based on Slutzkin's testimony, that some of such hats were made of materials other than felt. This latter hypothesis was based on the foreman's testimony. Being disregarded, his accuracy or inaccuracy becomes irrelevant.

Appellants' counsel did his best to confuse the issue of the allowances for silk. It was his contention that an insufficient yardage was credited for silk used as trimming. He based this on his assertion that all the hat bodies were trimmed with silk. This was manifestly not the fact. The crepe hats, for instance, were both according to the testimony and as a matter of common sense made of, not trimmed with, crepe, hence the high yardage. That was the reason for Slutzkin's high estimate of 3½ to 5 yards per hat (the referee allowed six yards for each crepe hat). The silk used on the straw hats, on the other hand, was properly spoken of as trimming and for them a yard and one half per dozen hats was credited by appellants' foreman. In a third class of hats, namely those made of felt and velvet, the trimming was not silk, but other materials, such as grosgrain ribbons, and for them naturally no allowance of silk was necessary. As we said, counsel's cross-examination was not fashioned to clarify the silk trimming controversy. It seemed to us, however, that the accountant and referee correctly dispelled the not unusual fogs of advocacy.

For once both sides are agreed about the law. The authorities prescribe a high degree of proof. Oriel v. Russell, 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. 419. In this class of cases the rule seems to stem from some presumption of honesty (14 American and English Encyclopedia of Law (2d Ed.) p. 202). Writers have seen fit to refer to presumptions generally as "the bats of the law." In so doing, they give expression to the thought that it would be wiser to leave the trier of the facts unfettered by any canons of supposedly predictable human behavior.

The turnover order of the referee is affirmed.