**In re EISENBERG et al.**

No. 7986.

Circuit Court of Appeals, Third Circuit.

Argued May 22, 1942.

Decided Aug. 19, 1942.

Joseph A. Keough, of Philadelphia, Pa. (Levi, Mandel & Miller, of Philadelphia Pa., on the brief), for appellants.

Morris M. Wexler, of Philadelphia, Pa. (Wexler & Weisman, of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

Morris Eisenberg and Alex Eisenberg, trading as Eisenberg Brothers, filed a petition under section 74 of the Bankruptcy Act, 11 U.S.C.A. § 202, seeking to effect a composition or extension with creditors. These proceedings were unsuccessful and a trustee was directed to liquidate the estate. The trustee petitioned for an order directing the bankrupts to turn over to him merchandise of the estate for which they had not accounted, or in the alternative, to pay the trustee the value of the merchandise. The referee in bankruptcy dismissed the petition. Upon certificate for review the district court found that the trustee had proved a merchandise shortage of 740 suits and 868 pairs of pants having a value of $12,449.90 and that the goods were in the possession of the bankrupts on June 21, 1938, the day on which their petition under Section 74 was filed and it directed the bankrupts to turn over to the trustee the merchandise or its value.

The bankrupts contend that the evidence as to the merchandise shortage was insufficient to justify a turnover order. Judge Kalodner's opinion (D.C., 41 F. Supp. 482) contains so searching and satisfactory an analysis of the evidence that a discussion of it by us would serve no useful purpose. Suffice it to say that the evidence amply sustains his finding that the merchandise or its value was in the possession of the bankrupts at the time their petition was filed.

The trustee offered in evidence a book, identified as Exhibit 27, which contained a record of the production of the suits and pants manufactured by the bankrupts. The referee refused to admit this exhibit in evidence because the trustee did not call the maker of the record to authenticate it and did not prove that he was unavailable to testify. The district court held the exhibit properly authenticated and relevant. The bankrupts now concede that the authentication sufficiently complies with the requirements of the Act of June 20,

1936, c. 640, § 1, 28 U.S.C.A. § 695, dealing with writings and records made in the regular course of business. The sole objection to the admission of Exhibit 27 is grounded on its relevancy. In the light of the testimony by one of the bankrupts that he instructed the employee as to what entries to make in the book it is clearly relevant. However, even if Exhibit 27 were not admitted in evidence and its entries were in no way considered we think the court's conclusion that a merchandise shortage had been proved by clear and convincing evidence was justified.

■ The bankrupts object to the form of the turnover order because it does not specify what part of the merchandise or what portion of the money each bankrupt is to surrender to the trustee. In view of the court's finding that they both had possession or control of the merchandise or its value the joint order was quite proper. Nor is the form of the order unique. Compare the order in Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419, and see discussion in Coates v. Dresner, 3 Cir., 1929, 34 F.2d 264, and In re Arctic Leather Garment Co., 2 Cir., 1939, 106 F.2d 99.

Finally we come to the contention of the bankrupts that the turnover order is invalid because the trustee failed to prove affirmatively the ability of the bankrupts to comply with the order at the date of its entry. Such a statement of the duty of the trustee in turnover proceedings finds apparent support in the authorities cited by them. Thus in Collier on Bankruptcy, 14th Ed., § 23.10, p. 520, speaking of the duty of the trustee in turnover proceedings the editors state, " * * * it must be proved that the person proceeded against has either possession or control of the property or proceeds demanded. It is not enough, however, for the receiver or trustee to prove that at the time of bankruptcy the property or proceeds sought to be recovered were within the possession or control of the person proceeded against; it must also be proved that possession or control exists at the time of the issuance of the turnover order." Cases from the second and seventh circuits are cited which sustain this statement of the law. The editors, however, issue a caveat in a footnote that there are other views.

■ One of those views, and the view consistently held by this court, is that in proceedings for a turnover order the sole burden upon the trustee is to prove that the person being proceeded against had possession or control of property belonging to the bankrupt estate at the time of the filing of the petition in bankruptcy and that he failed to deliver this property to the trustee. If the court grants the turnover order and the person to whom it is directed fails to comply with it the trustee may seek to compel compliance through contempt proceedings. It is only in these proceedings that the issue arises as to the ability of the person to whom the turnover order was directed to comply with it. It is then open to him to show that by reason of events occurring since bankruptcy he is unable to do so. This practice was described with precision and clarity by Judge McPherson, sitting in the district court, in the case of In re Epstein, D.C.Pa. 1913, 206 F. 568, affirmed sub nomine Epstein v. Steinfeld, 3 Cir., 1914, 210 F. 236, and was followed, inter alia, in Schmid v. Rosenthal, 3 Cir., 1916, 230 F. 818; Frederick v. Silverman, 3 Cir., 1918, 250 F. 75, and Toplitz v. Walser, 3 Cir., 1928, 27 F.2d 196. In Oriel v. Russell, supra, 278 U.S. 358, 49 S.Ct. 175, 73 L.Ed. 419, Chief Justice Taft took cognizance of the divergent views upon turnover and contempt proceedings. Of the eight cases which he cited as appearing to the court to set forth the "more nearly * * * correct view" four were the cases from this court to which we have just referred. Furthermore he followed our practice of separating the issues dealt with in turnover and contempt proceedings when he stated (278 U.S. page 366, 49 S.Ct. page 175, 73 L.Ed. 419): "In the two cases before us, the contemnors had ample opportunity in the original hearing to be heard as to the fact of concealment, and in the motion for the contempt to show their inability to comply with the turnover order."

The bankrupts make much of the fact that in Oriel v. Russell, supra, the Supreme Court held that upon a motion for commitment for contempt "the only evidence that can be considered is the evidence of something that has happened since the turnover order was made showing that since that time there has newly arisen an inability on the part of the bankrupt to comply with the turnover order." They argue therefrom that the turnover order must be deemed to determine not only the fact of possession at the time of the filing of the petition in bankruptcy, but also

the ability of the bankrupt to comply with the turnover order at the date of its entry. The opinion of the Supreme Court in the Oriel case when read as a whole, particularly in the light of the express approval therein of the practice followed in this court, makes it abundantly clear that the time to which the Supreme Court had reference was the time to which the turnover order was directed, namely, the date as of which the court determined possession or control to be in the person proceeded against and not the date on which the turnover order was entered in the clerk's office. The latter date is, after all, a fortuitous one having no necessary relation to the facts of the case.

This is aptly illustrated in the case before us. The petition under Section 74 was filed on June 21, 1938. Evidence was heard by the referee in April and May, 1940. The order of the district court directing the turnover was not entered until October 8, 1941. Obviously the ability of the bankrupts to comply with the order on October 8, 1941 could not have been determined from the consideration of evidence taken in May, 1940. As a matter of fact in this case the evidence was properly directed to the time of the filing of the petition under Section 74 and the court's adjudication, as we have seen, was likewise directed to that time.

The bankrupts rely upon numerous cases from the Second Circuit. In that circuit, as we have seen, the decisions require that the trustee prove not only possession at the time of the petition in bankruptcy but also ability to deliver the property at the time of the turnover proceeding. The standard of proof set forth in Oriel v. Russell, supra, is that the evidence must be clear and convincing. Nevertheless the Circuit Court of Appeals for the Second Circuit has approved the use of the presumption of continued possession as a means of meeting the burden of proof which it has placed upon the trustee. It is this presumption of continued possession which Judge Learned Hand finds unjustifiable. Nevertheless, albeit with much protesting, he applied the presumption in Seligson v. Goldsmith, 2 Cir., 1942, 128 F. 2d 977, the latest case in that circuit to which we have been referred. Since the rule of this court does not require the trustee in the initial turnover proceeding to prove continued possession he has no need to avail himself of the presumption

indulged in the Second Circuit. It follows that the cases from that circuit can have no application to the question with which we are here concerned.

The order of the district court is affirmed.