## In re AMDUR.

### No. 10256.

District Court, M. D. Pennsylvania.

Oct. 14, 1942.

Harry Coplan, of Wilkes Barre, Pa., for bankrupt.

Robert J. Doran, of Wilkes Barre, Pa., and Wexler & Weisman, of Philadelphia, Pa., for trustee.

WATSON, District Judge.

This proceeding arose as a result of the failure of the bankrupt to comply with an order of the Referee entered November 3, 1941, directing the bankrupt to turn over merchandise of the cost value of $42,595, or the equivalent thereof in value. On April 24, 1942, after a full hearing the Referee filed his certificate of contempt in this Court and argument was had thereon.

The evidence received by the Referee consisted principally of the records of the bankrupt and the testimony of an accountant based thereon. This evidence clearly supports the finding of the Referee as to the inventory shortage of a cost value of $42,595. The accountant's testimony was directed to the period from January 1, 1941, to April 23, 1941, upon which latter date a receiver took possession of the assets of the bankrupt. As his defense, the bankrupt testified that the inventory figure for December 31, 1940, of approximately $40,000, used by the accountant as the starting point for his determination of the inventory shortage of April 23, 1941, was only an estimate of the inventory on hand. The inventory figure in question was taken from the books of the bankrupt and also from the income tax return of the Bankrupt for the year ending December 31, 1940, and the Bankrupt testified that it was his personal estimate of the inventory on hand. The Bankrupt further testified that inventory on hand on December 31, 1940, might have been $10,000, or it might have been $80,000, and that the figure contained in his books and tax return was not obtained by taking a physical inventory of the merchandise. However, assuming that the inventory on December 31, 1940, had a cost value of only $10,000, there is still a substantial inventory shortage which the Bankrupt has failed to explain. There was some inconclusive evidence offered by the Bankrupt as to two alleged robberies occurring during the accounting period, the identity of the robbers being unknown, and the amount of merchandise taken, if any, being unknown and unestimated, although the Bankrupt testified that "they could have taken thousands and thousands of dollars." The Referee expressed his disbelief of this evidence and the record furnishes ample justification for this position. The Referee found as a fact that the Bankrupt did possess the merchandise and entered the turnover order referred to above.

At the hearing before the Referee on the proceeding for contempt the Bankrupt testi-

fied that he did not have the merchandise or its value, but that there had been no change in his situation so far as the merchandise or its equivalent is concerned since the date of the turnover, and that he never had the merchandise here involved or its proceeds.

The Bankrupt contends that the turnover order entered by the Referee cannot support a proceeding for contempt because the order was based on accounting evidence, and the specific merchandise for which the bankrupt must account is not specified therein. In support of this contention, the bankrupt relies upon four cases decided in the Eastern District of Pennsylvania. In re Tabak, D.C., 34 F.2d 209; In re Gerson, D.C., 35 F.2d 539; In re Satzberg, D.C., 42 F.Supp. 282; In re Zappala, D.C., 44 F.Supp. 353.

These cases appear to adopt a rule that a proceeding for contempt cannot be supported by a turnover order based upon inventory shortages revealed by accounting methods; or, perhaps more accurately, that where the turnover order is based only on accounting evidence, in order to commit for contempt, the trustee must offer additional evidence to prove the specific goods taken and the present ability of the bankrupt to comply with the order.

The Tabak case, which is followed by the other cases cited, justifies the rule on the ground, first, that the findings and, consequently, the order do not set forth the specific property which is withheld by the bankrupt and, therefore, are not sufficiently definite; and second, that such evidence is insufficient to show that the bankrupt is actually able to comply with the turnover order.

The Supreme Court, in the case of Cooper v. Dasher, 290 U.S. 106, 54 S.Ct. 6, 78 L. Ed. 203, decided that turnover orders similar to the one here under consideration and those found to be improper in the cases relied upon by the bankrupt are proper. The Court said, at page 109, of 290 U.S., at page 7 of 54 S.Ct.: "The order gives the only description that the nature of the case allows. The respondent, and no one else, is in a position to supply a better one. The mandate is addressed to him, and to him its meaning is definite, however indefinite to others. If it is clear enough to be understood, it is clear enough to be obeyed."

The second ground of the rule in the Tabak case is, I believe, also untenable. There are many cases which hold that, where the records of the bankrupt disclose that merchandise of the bankrupt has not been accounted for, a turnover order may properly issue against the bankrupt without further proof of his ability to comply therewith. Sheinman v. Chalmers, 3 Cir., 33 F. 2d 902; Goldman v. Sklar, 3 Cir., 78 F.2d 999; In re Ginsburg et al., D.C., 50 F.2d 240; Kirsner v. Taliaferro, 4 Cir., 202 F. 51. See also In re Eisenberg, 3 Cir., 130 F.2d 160, 162. The reason for such decisions is obvious, for the bankrupt is in a position to tell when and how this merchandise was removed and where this merchandise or its proceeds have been secreted. To compel the trustee to not only prove that merchandise is being withheld, but also where and how it is being concealed, would have little benefit except to encourage fraud. There is no doubt but that the bankrupt has concealed a substantial amount of his assets, but so far the diligent efforts of the trustee and his counsel have been unavailing in their efforts to locate the missing property. The bankrupt alone knows the disposition which has been made of this property. It would, therefore, be a gross miscarriage of justice to deny to the trustee the only remedy which he has to compel the bankrupt to surrender the property which he seeks to withhold from those rightfully entitled to it.

I can see no valid reason for refusing to rely upon the facts disclosed by the records of the bankrupt. He has kept them and held them out to the public as containing an accurate account of the transactions of his business. If the records are not correct, he has an opportunity to so testify and, although such a disclosure might prove embarrassing to the bankrupt, the Court certainly should have no concern for his discomfiture.

It is quite possible that the bankrupt is not withholding the exact amount of property fixed by the order of the Referee, but the amount fixed by the order is the amount clearly justified by the evidence offered. If the amount fixed is too large, it is only because the bankrupt refused to avail himself of the opportunity given him to make a truthful statement as to the property which he withholds. If the amount fixed is too small, it is an equally regrettable fact but one of which the bankrupt has no cause to complain.

The bankrupt failed to comply with the turnover order and, at the hearing before the Referee, offered no evidence "to show that by reason of events occurring

since bankruptcy he is unable to do so." In re Eisenberg, supra. It is, therefore, the duty of this Court to adjudge the Bankrupt in contempt.